# NORTHERN ASSURANCE COMPANY *v.* GRAND VIEW BUILDING ASSOCIATION.

## CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE EIGHTH CIRCUIT.

No. 60. Argued October 28, 1901.—Decided January 6, 1902.

Over insurance by concurrent policies on the same property tends to cause carelessness and fraud; and a clause in a policy rendering it void in case other insurance had been or should be made upon the property and not consented to by the insurer, is customary and reasonable.

In this case such a provision was expressly and in unambiguous terms contained in the policy sued on, and it was shown in the proofs of loss furnished by the insured, and it was found by the jury, that there was a policy in another company outstanding when the one sued upon in this case was issued; and hence the question in this case is reduced to one of waiver.

It is a fundamental rule in courts both of law and equity, that parol contemporaneous evidence is inadmissible to contradict or vary the terms of a valid written instrument, unless in cases where the contracts are vitiated by fraud or mutual mistake.

Where a policy provides that notice shall be given of any prior or subsequent insurance, otherwise the policy to be void, such a provision is reasonable, and constitutes a condition, the breach of which will avoid the policy.

Where the policy provides that notice of prior or subsequent insurance must be given by indorsement upon the policy, or by other writing, such provision is reasonable and one competent for the parties to agree upon, and constitutes a condition, the breach of which will avoid the policy.

Contracts in writing, if in unambiguous terms, must be permitted to speak for themselves, and cannot, by the courts at the instance of one of the parties, be altered or contradicted by parol evidence, unless in case of fraud or mutual mistake of facts, and this principle is applicable to cases of insurance contracts.

Provisions contained in fire insurance policies that such a policy shall be void and of no effect if other insurance is placed on the property in other companies without the knowledge and consent of the insuring company, are usual and reasonable.

It is reasonable and competent for the parties to agree that such knowledge and consent shall be manifested in writing, either by endorsement upon the policy, or by other writing.

It is competent and reasonable for insurance companies to make it matter of condition in their policies that their agents shall not be deemed to have

authority to alter or contradict the express terms of the policies as executed and delivered.

Where fire insurance policies contain provisions whereby agents may, by writing indorsed upon the policy or by writing attached thereto, express the company's assent to other insurance, such limited grant of authority is the measure of the agent's power.

Where such limitation is expressed in the policy, the assured is presumed to be aware of such limitation.

Insurance companies may waive forfeiture caused by non-observance of such conditions.

Where waiver is relied upon, the plaintiff must show that the company, with knowledge of the facts that occasioned the forfeiture, dispensed with the observance of the condition.

Where the waiver relied on is the act of an agent, it must be shown either that the agent had express authority from the company, to make the waiver, or that the company, subsequently, with knowledge of the facts, ratified the action of the agent.

In September, 1898, the Grand View Building Association, a corporation organized under the laws of Nebraska, in the District Court of Lancaster County of that State, brought an action against the Northern Assurance Company of London, incorporated under the laws of the Kingdom of Great Britain and Ireland, seeking to recover the sum of $2500 as due under the terms of a policy of insurance that had been issued by the assurance company to the plaintiff company on December 31, 1896, on certain property situated in said Lancaster County, and which, on June 1, 1898, had been destroyed by fire.

Thereupon the defendant company filed in the said county court a petition and bond, in due form, and prayed for an order removing the cause to the Circuit Court of the United States for the District of Nebraska; and on September 29, 1898, the county court approved the bond, and entered an order granting the prayer of the petition for removal.

Subsequently the case was put at issue on the petition, answer and reply in the Circuit Court of the United States, and was so proceeded in that, on October 20, 1898, a special verdict was found by the jury empanelled in the case, and on January 14, 1899, a final judgment was entered for the plaintiff and against the defendant company in the sum of $2500, with interest and costs. The cause was then taken to the United States Circuit

Court of Appeals for the Eighth Circuit, and that court, on March 26, 1900, affirmed the judgment of the Circuit Court. 101 Fed. Rep. 27. Thereafter, on petition of the defendant company, a writ of certiorari was allowed, in response to which the record and proceedings in the cause were brought to this court.

*Mr. R. W. Breckenridge* and *Mr. Charles J. Greene* for the Assurance Company.

*Mr. Halleck F. Rose* for the Building Association. *Mr. Joseph R. Webster* was on his brief.

Mr. Justice Shiras, after making the above statement, delivered the opinion of the court.

In order that the questions discussed in this case and the grounds of our judgment therein may sufficiently appear, it seems proper to set out, with substantial fulness, the pleadings of the parties and the special verdict of the jury.

The plaintiff's petition, having alleged the making of the policy of insurance and the destruction of the property insured, then proceeded to allege in its fourth paragraph, apparently by way of meeting an expected defence, that "plaintiff, shortly prior to issuance of aforesaid policy by the defendant, had procured a policy of insurance from the Firemen's Fund Insurance Company, incorporated under the laws of California, insuring it against loss by fire of the same property in the sum of $1500 for a term of two years, which insurance was then subsisting and remained in force to and including the date of said fire; that the fact of said subsisting insurance in said company was, by H. J. Walsh, plaintiff's president, disclosed to defendant at and prior to the execution and delivery of said policy, and prior to payment by plaintiff of said premium therefor, and was so by him orally disclosed and communicated to defendant's recording agent at Lincoln, Nebraska, A. D. Borgelt, who then had full authority from defendant to countersign and issue its policies and accept fire insurance risks in its behalf and accept and receive the premium therefor, and who in fact accepted said

risk and issued said policy, and accepted and received said premium as such agent in behalf of defendant with knowledge beforehand of said concurrent insurance, and with the intent knowingly to waive the condition of said policy that 'it shall be void if the insured now has or shall hereafter make or procure any other contract of insurance' on the property covered thereby. And by the aforesaid several acts and by procuring, receiving, accepting and retaining of said insurance premium with knowledge of said subsisting concurrent insurance the defendant has waived the said condition and is estopped to claim benefit thereof, and is bound by said policy notwithstanding said condition; the plaintiff had no insurance on said property except as before stated."

Having stated that plaintiff had rendered and delivered a statement of loss, in compliance with the terms of the policy, the petition further alleged that "on the 26th day of July, 1898, the plaintiff demanded of defendant the payment of said insurance; and defendant, disregarding its undertaking in that behalf, denies liability on the sole ground that said policy has been void from the date of its issue by reason of the said provision in regard to other insurance, the same provision which as aforesaid it had waived at the time of issuing its said policy."

The answer of defendant admitted the making of the policy, the destruction of the insured property by fire, and proof of loss, but denied specifically the allegations of the fourth paragraph of said petition, as follows:

"Further answering, this defendant alleges that the policy of insurance which it issued to the plaintiff on December 31, 1896, contained the following provision:

"'This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void if the insured now has or shall hereafter make or procure any other contract of insurance, whether valid or not, on property covered in whole or in part by this policy.' The defendant further says that its policy in question was issued to the plaintiff with the express statement therein made that it was issued in consideration of the 'stipulations' therein named and a certain amount of premium paid therefor. And said policy, besides the provisions

above quoted, contains the following stipulation and condition: 'This policy is made and accepted subject to the foregoing stipulations and conditions, together with such other provisions, agreements or conditions as may be indorsed hereon or added hereto, and no officer, agent or other representative of this company shall have power to waive any provision or condition of this policy except such as by the terms of this policy may be the subject of agreement indorsed herein or added thereto, and as to such provisions and conditions no officer, agent or representative shall have such power or be deemed or held to have waived such provisions or conditions unless such waiver, if any, shall be written upon or attached hereto, nor shall any privilege or permission affecting the insurance under this policy exist or be claimed by the insured unless so written or attached.' The defendant says that notwithstanding the stipulations, provisions and agreements above set forth and without the consent of the defendant endorsed upon said policy in writing, and without the knowledge of the defendant, the plaintiff obtained a policy of insurance, upon the property covered by the policy issued by this defendant, in the sum of $1500 in the Firemen's Fund Insurance Company.

" Defendant says that the property upon which it issued its policy in the sum of $2500 was represented by the plaintiff to the defendant to be of the value of $3500. The defendant alleges that by reason of the additional insurance upon said property, not consented to in writing endorsed upon the policy of defendant, and not in fact known to the defendant, the policy written by the defendant upon the plaintiff's property was, at the date of the fire which damaged or destroyed the plaintiff's property wholly void, and was and has been void from the date of such additional assurance. Defendant further says that on the 5th day of August, 1898, the defendant tendered to the plaintiff in current fund the sum of $33.75, the amount of the premium paid by the plaintiff upon the policy in question, and now brings into court and tenders to the plaintiff the said sum of $33.75, with interest at the rate of seven per cent from December 31, 1896."

The plaintiff company replied to the answer, denying that

it procured a policy of insurance in the Firemen's Fund Insurance Company upon the property insured by defendant in violation of the terms of the policy issued by defendant and without the knowledge of defendant, and made the following allegations :

"The policy referred to in said answer of $1500 in the Firemen's Fund Insurance Company was, on the contrary, subsisting at and prior to the issuance by defendant to the plaintiff of the policy sued on herein, and was in fact issued December 12, 1895, for the term of three years, and the existence of such policy was personally well known to A. D. Borgelt, defendant's recording agent, who wrote said policy, and accepted said risk, and who then had full charge of defendant's agency at Lincoln, Nebraska, with authority to accept fire insurance risks for and on defendant's behalf, to countersign and issue its policies of insurance, and to collect and receive the premiums therefor.    And at and prior to his acceptance of said risk and insurance of the policy sued on, the plaintiff's president, H. J. Walsh, reported orally to said A. D. Borgelt the fact of such subsisting insurance of $1500, and said Borgelt, as such agent, with full knowledge of said fact, accepted the risk, and wrote, executed and delivered said policy to defendant, with the intent on the part of both plaintiff and defendant that the same should be concurrent with the said subsisting insurance and not avoided nor affected thereby, and with purpose and intent of defendant knowingly to waive and forego all benefit of the provisions of said policy set forth in defendant's answer ; and in faith thereof and with the sole purpose to procure such insurance to be concurrent with the subsisting insurance, and not otherwise, the plaintiff paid, and the defendant procured and received, the premium therefor.    By all the aforesaid several acts the defendant has waived all benefit of the particular conditions of its policy prohibiting concurrent insurance, prior and subsequent, except by endorsement on the policy ; and the defendant is estopped and concluded thereby from claiming any benefit or advantage by reason of said conditions of the policy."

In support of its side of the issues thus presented, the plain-

tiff company called as witnesses H. J. Walsh, its president, and
Bert Richards, the agent of the Firemen's Fund Insurance
Company, who testified that Borgelt was informed by them
and had knowledge of the subsisting insurance at and before
the delivery of the policy in suit. The plaintiff likewise put
in evidence the original policy sued on, and a letter from G. H.
Lermit, manager of the defendant company at Chicago, Illi-
nois, and who had signed the policy in suit as such agent, in
the terms following:

"CHICAGO, *Aug.* 2, 1898.

"To Grand View Building Association, H. J. Walsh, President,
   Lincoln, Nebraska.

"DEAR SIRS: We have your favor of the 26th ult. enclosing
to us what purports to be proof of loss, making claim under
our policy No. 310,024, of Lincoln, Nebraska, agency, and is-
sued to you for $2500 on household furniture, &c., while con-
tained in the three-story brick and stone building on lot F in
Grand View Residence Park addition, on account of a fire
which occurred on the 1st day of June, 1898, and beg to say
in reply that your sworn statement therein, advises us that you
had other insurance on this same property to the amount of
$1500. This additional insurance held by you was without the
knowledge or consent of this company, and was not permitted
by agreement as provided for in lines Nos. 11, 12 and 13 of the
printed conditions of our policy, to which we beg to refer you.
We, therefore, regret to have to advise you and do hereby say
to you that the Northern Assurance Company specifically
and absolutely denies any and all liability under said policy
No. 310,024 held by you, holding that said policy has been void
from the date of its issuance by reason of the said provision in
regard to other insurance above referred to.

"Our agents at Lincoln have been instructed to return to
you the full premium paid them by you, namely, $33.75, at
once."

The plaintiff further offered the original policy in evidence,
containing, among other things, the following provisions:

"This entire policy, unless otherwise provided by agreement
endorsed hereon or added hereto, shall be void if the insured

now has or shall hereafter make or procure any other contract of insurance, whether valid or not, on property covered in whole or in part by this policy."

"This policy is made and accepted subject to the foregoing stipulations and conditions, together with such other provisions, agreements and conditions as may be endorsed hereon or added hereto, and no officer, agent or other representative of this company shall have power to waive any provision or condition of this policy except such as by the terms of this policy may be the subject of agreement endorsed hereon or added hereto, and as to such provisions and conditions no officer, agent or representative shall have such power or be deemed or held to have waived such provisions or conditions unless such waiver, if any, shall be written upon or attached hereto, nor shall any privilege or remission affecting the insurance under this policy exist or be claimed by the insured unless so written or attached."

The defendant, to maintain the issues on its part, called as a witness A. D. Borgelt, who testified that he was a member of the firm of Borgelt & Beasley, insurance agents at Lincoln, Nebraska, which firm wrote the policy in the Northern Assurance Company on the Grand View Building Association; that at the time he wrote the policy he had no notice or knowledge that there was other insurance upon the property covered by the policy in suit, and the first time he knew of any other insurance was after the fire; that while Walsh might have mentioned that there was an existing policy, he, the witness, had no recollection of having known anything about the other insurance until after the fire. He further testified that on August 4, 1898, the premium paid for the policy in suit was tendered to the plaintiff company, which declined to take it. The defendant thereupon moved the court to instruct the jury to return a verdict for the defendant, which motion was overruled, and defendant excepted.

The jury, under the instructions of the court, found that the defendant company issued to the plaintiff company the policy described in the plaintiff's petition; that the property covered by said policy of insurance was burned on or about June 1,

1898; that the plaintiff, on or about July 26, 1898, furnished the defendant with proofs of the loss of said property by fire; that the policy contained the provision hereinbefore mentioned, providing that the policy should be void if the insured had or should thereafter make or procure any other contract of insurance on the property covered by the policy in suit, and that the policy was made subject to such condition, and that no officer, agent or other representative of the company should have power to waive any provision or condition of the policy except such as by the terms of the policy had been endorsed thereon or added thereto, and that no officer, agent or representative of the company should have power or be deemed or held to have waived such provision or condition unless such waiver was written upon or attached to the policy, and that no privilege or provision affecting the insurance under the policy should exist or be claimed by the insured, unless so written or attached; that there was at the time of the issuance of the policy in suit other insurance upon the insured property in the sum of $1500, in the Fireman's Fund Insurance Company; that Borgelt was recording agent of the Northern Assurance Company, at Lincoln, Nebraska, with authority from the defendant company to countersign and issue its policies and accept fire insurance risks in its behalf, and to collect and receive premiums therefor, and that he had issued the policy sued on as such agent; that Borgelt knew, when the policy in the defendant company was issued and delivered to the plaintiff company, that there was then $1500 subsisting insurance in the Firemen's Fund Insurance Company upon the insured property, issued prior to the date of the policy of the defendant company, and that such knowledge was communicated to said Borgelt by and on behalf of the assured; that the actual cash value of the property covered by the policy in suit and destroyed by fire June 1, 1898, was $4140; that no consent to concurrent insurance of $1500 was endorsed on the policy in suit; and that, on August 4, 1898, the amount of the premium paid for the policy was tendered to and refused by the plaintiff.

Thereafter motions were respectively made by the plaintiff and defendant for judgment upon the findings and special ver-

dict of the jury, and on January 14, 1899, the motion of the defendant was overruled, and exception was taken by the defendant, and the motion of the plaintiff was sustained, and judgment was entered in favor of the plaintiff and exception was taken by the defendant. A writ of error was prayed for by the defendant and allowed, and the cause was taken to the United States Circuit Court of Appeals for the Eighth Circuit, where the judgment of the Circuit Court was affirmed, and the cause was then brought to this court by a writ of certiorari.

Over insurance by concurrent policies on the same property tends to cause carelessness and fraud, and hence a clause in the policies rendering them void in case other insurance had been or should be made upon the property and not consented to in writing by the company, is customary and reasonable.

In the present case, such a provision was expressly and in unambiguous terms contained in the policy sued on, and it was shown in the proofs of loss furnished by the insured, and it was found by the jury, that there was a policy in another company outstanding when the present one was issued.

It also was made to appear that no consent to such other insurance was ever endorsed on the policy or added thereto.

Accordingly it is a necessary conclusion that by reason of the breach of the condition the policy became void and of no effect, and no recovery could be had thereon by the insured unless the company waived the condition. The question before us is therefore reduced to one of waiver. The policy itself provides the method whereby such a waiver should be made: " This policy is made and accepted subject to the foregoing stipulations and conditions, together with such other provisions, agreements or conditions as may be endorsed hereon or added hereto, and no officer, agent or other representative of this company shall have power to waive any provision or condition of this policy, except such as by the terms of this policy may be the subject of agreement endorsed hereon or added hereto, and as to such provisions or conditions no officer, agent or representative shall have such power or be deemed or held to have waived such provisions or conditions, unless such waiver, if any, shall be written upon or attached hereto, nor shall any provision or

permission affecting the insurance under this policy exist or be claimed by the insured unless so written or attached."

Before proceeding to a direct consideration of the question before us, it may be well to inquire into the principles established by the authorities as applicable to such cases.

It is a fundamental rule, in courts both of law and equity, that parol contemporaneous evidence is inadmissible to contradict or vary the terms of a valid written instrument. This rule is thus expressed in Greenleaf on Evidence, vol. 1, sec. 275, 12th ed. :

" When parties have deliberately put their engagements into writing, in such terms as import a legal obligation, without any uncertainty as to the object or extent of such engagement, it is conclusively presumed that the whole engagement of the parties, and the extent and manner of their undertaking was reduced to writing; and all oral testimony of a previous *collo-quium* between the parties, or of conversation or declarations at the time when it was completed, or afterwards, as it would tend in many instances to substitute a new and different contract for the one which was really agreed upon, to the prejudice, possibly, of one of the parties, is rejected."

The rule is thus expressed by Starkie, 587, 9th Am. ed. :

" It is likewise a general and most inflexible rule, that wherever written instruments are appointed, either by the requirement of law, or by the compact of the parties, to be the repositories and memorials of truth, any other evidence is excluded from being used, either as a substitute for such instruments or to contradict or alter them. This is a matter both of principle and policy ; of *principle*, because such instruments are in their nature and origin entitled to a much higher degree of credit than parol evidence; of *policy*, because it would be attended with great mischief if those instruments upon which men's rights depended were liable to be impeached by loose collateral evidence."

This rule has always been followed and applied by the English courts in the case of policies of insurance in writing.

Thus in *Weston* v. *Eames*, 1 Taunt. 115, it was held that parol evidence of what passed at the time of effecting a policy is not

admissible to restrain the effect of the policy, Mansfield, C. J., observing that " such evidence could not be admitted, without abandoning in the case of policies, the rule of evidence which prevails in all other cases; and that it would be of the worst effect if a broker could be permitted to alter a policy by parol accounts of what passed when it was effected."

In *Robertson* v. *French*, 4 East, 130, it was held, per Lord Ellenborough, in a suit on a marine policy of insurance, that a parol agreement that the risk should begin at a place different from that inserted in the policy, cannot be received in evidence.

These cases are cited as establishing the rule in cases of insurance in Marshall on Marine Insurance, 278, and in Arnold on Insurance, vol. 1, p. 277.

In *Flinn* v. *Tobin*, 1 Mood. & Malle. 367, Lord Tenderden, C. J., said that " the contract between the parties is the policy which is in writing, and cannot be varied by parol. No defence, therefore, which turns on showing that the contract was different from that contained in the policy, can be admitted; and this is the effect of any défence turning on the mere fact of misrepresentation without fraud."

So, where, in assumpsit for use and occupation, upon a written memorandum of lease, at a certain rent, parol evidence was offered by the plaintiff of an agreement at the same time to pay a further sum, being the ground rent of the premises, to the ground landlord, it was rejected. *Preston* v. *Merceau*, 2 W. Bl. 1249.

And where, in a written contract of sale of a ship, the ship was particularly described, it was held that parol evidence of a further descriptive representation, made prior to the time of sale, was not admissible to charge the vendor without proof of actual fraud; all previous conversations being merged in the written contract. *Pickering* v. *Dowson*, 4 Taunt. 779. See, also, *Powell* v. *Edminds*, 12 East, 6; *Smith* v. *Jeffreys*, 15 M. & W. 561; *Gale* v. *Lewis*, 9 Q. B. 730; *Executors* v. *Ins. Co.*, 7 M. & W. 151.

The case of *Western Assurance Co.* v. *Doul et al.*, 12 Canada S. Ct. 446, was one where a policy of insurance against loss by fire contained the following condition: " In case of subsequent

insurance, notice thereof must be given in writing at once, and such subsequent insurance endorsed on the policy granted by this company, or otherwise acknowledged in writing; in default whereof such policy shall forthwith cease and be of no effect."

The insured effected subsequent insurance and verbally notified the agent, but there was no endorsement made on the policy, nor any acknowledgment in writing by the company. A loss having occurred, the damage was adjusted by the inspector of the company, and neither he nor the agent made any objection to the loss on the ground of non-compliance with the above condition. In a suit to recover the amount of the policy the company pleaded breach of the condition, in reply to which the plaintiff set up a waiver of the condition and contended that by the act of the agent and inspector the company was estopped from setting it up. It was *held* by the Supreme Court of Canada that the insured not having complied with the condition, the policy ceased and became of no effect on the subsequent insurance being effected, and that neither the agent nor the inspector had power to waive a compliance with its terms.

In discussing the question of the power of the agent to waive the condition, the court said: "It is not shown that it was within the scope of Greer's authority as a local agent to waive such a condition. The condition itself does not, either by express words or by implication, recognize such an authority, but the reason for requiring the notice obviously points to a directly contrary construction. Moreover, the English case already quoted, (*Gale* v. *Lewis*, 9 Q. B. 730,) which determines that the required notice is to be given to the company itself and not to the local agent, shows, *a fortiori*, that such an agent has, in the absence of express authority, no power to waive the condition. Direct authority is, however, not wanting. In the case of *Shannon* v. *Gore Mutual Insurance Company*, (2 Ont. App. 396,) the facts were the same as in the present case, the subsequent assurance having been effected through the agent who also acted for the defendant in taking the original risk. It was contended that the successive insurances having been thus effected with the same person as the agent of the two companies, the company which granted the first policy had knowledge of the sub-

sequent insurance, and were therefore estopped from setting up a condition vititating the policy for want of a written notice. But the Court of Appeals held otherwise, and determined that 'in such a case notice to the agent was not notice to the company, and that the agent neither had authority to waive the condition nor could by his conduct estop his principals the first insurers.' As regards any direct action of the insurance company through their immediate agents, the directors or principal officers of the company conducting its affairs at the head office, there is no pretence for saying that there is in the present case the slightest evidence of conduct upon which either a defence of waiver of the condition, or by way of estoppel against insisting upon it, can be based, and this for the very plain reason that these directors and officers never had the fact of a subsequent assurance brought to their knowledge, and without proof of such knowledge neither waiver nor estoppel can be made out. The condition in the policy is one which must be complied with or waived. The company, by signing a condition of that kind, reserves to itself the right to withdraw the policy in case of further insurance. That question is one which cannot be decided by a mere local agent. He may receive the notice for transmission, but he cannot act on it ; it must be brought to the notice of some person authorized by the company to continue the insurance after notice has been given them. It has been decided in a number of cases in England that a local agent has not such authority, and a mere notice to him, even in a case where he is acting for another company taking the further risk, has been held to be no notice to the company."

Coming to the decisions of our state courts, we find that, while there is some contrariety of decisions, the decided weight of authority is to the effect that a policy of insurance in writing cannot be changed or altered by parol evidence of what was said prior or at the time the insurance was effected ; that a condition contained in the policy cannot be waived by an agent, unless he has express authority so to do ; and then only in the mode prescribed in the policy ; and that mere knowledge by the agent of an existing policy of insurance will not affect the

company unless it is affirmatively shown that such knowledge was communicated to the company.

In *Worcester Bank* v. *Hartford Fire Insurance Company*, 11 Cush. 265, which was a case of additional insurance, and where one Smith testified that he was agent for the defendant company to issue policies, and was in the habit of receiving notices of additional insurance, which he endorsed on the policies, it was held by the Supreme Judicial Court of Massachusetts that as it is provided in the policy on which this action is brought that if the assured or his assigns shall hereafter make any other insurance on the same property, and shall not with all reasonable diligence give notice thereof to this company, and have same endorsed on this instrument or otherwise acknowledged by them in writing, this policy shall cease and be of no further effect, and as, after the making of this policy, the assured obtained other insurance on the same property, but did not have the same endorsed on the policy or otherwise acknowledged by the defendants in writing, the policy was void, notwithstanding there was parol evidence tending to show that notice had been given to Smith, the company's agent.

The same court held, in *Hale* v. *Mechanics' Mutual Fire Insurance Company*, 6 Gray, 169, that a policy issued by a mutual fire insurance company, whose by-laws provided that any insurance subsequently obtained without the consent in writing of their president should avoid the policy, and that the by-laws should in no case be altered except by a vote of two thirds of the stockholders or directors, was avoided by a subsequent insurance obtained with the mere verbal consent of the president. It was said by Bigelow, J., giving the unanimous opinion of the court:

"Such being the rights of the parties under the contract, it is clear, upon the facts in this case, that the policy was annulled under the fifteenth article of the by-laws, by reason of the subsequent insurance procured by Stone and Pony on the property, without the assent of the president of the corporation in writing; unless the waiver of such written assent by the president, and his verbal assent to such subsequent insurance as found by the jury, operate to set aside this provision in the by-laws as to

this particular policy and render the contract valid, notwithstanding by its express terms, as by the clause in the by-laws, it would be otherwise void. But the difficulty in maintaining the plaintiff's position on this part of the case is, not only that it attempts to substitute for the written agreement of the parties a verbal contract, but that there is an entire absence of any authority on the part of the president to make such waiver or give such verbal assent. He was an agent, with powers strictly defined and limited, and could not act so as to bind the defendant beyond the scope of his authority. Story on Agency, secs. 127, 133; *Salem Bank* v. *Gloucester Bank*, 15 Mass. 29. By article 15 of the by-laws, his power to assent to subsequent insurance was expressly confined to giving such assent in writing. In order to guard against the danger of over insurance, the corporation might well require that any assent to further insurance on property insured by them should be given by the deliberate and well-considered act of their president in writing, and not be left to the vagueness and uncertainty of parol proof. The whole extent and limit of the president's authority in this respect were set forth in the by-laws attached to the policy in the present case, and, as the evidence shows, were fully known to the assured. . . . . If the argument of the plaintiff should be carried out to its legitimate result, it would give to the president the right, in any case, to suspend or change the by-laws by his verbal act and at his pleasure. This clearly he had no power to do. We are therefore of opinion that the finding of the jury does not render the policy valid; but that it was annulled by the subsequent insurance obtained by the assured without the written consent of the president."

In *Smith* v. *Niagara Fire Ins. Co.*, 60 Vermont, 682, the Supreme Court of Vermont, in an elaborate opinion; in *Wilson* v. *Ins. Co.*, 4 R. I. 141, the Supreme Court of Rhode Island, and in *Cleaver* v. *Traders' Ins. Co.*, 65 Mich. 527, and same case in 71 Michigan, 414, the Supreme Court of Michigan; held, that the fact that the company's agent had authority, in a certain way or manner, to consent to the taking of additional insurance, does not aid the plaintiff; that the agent did not consent, in the cases cited, within the line of his authority or

in the manner prescribed by the policy, wherein the agent is expressly prohibited from waiving or modifying the written contract.

The same view of the law prevails in Connecticut. In *Sheldon* v. *Hartford Fire Insurance Company*, 22 Conn. 235, it was held that where the policy and survey constituted a contract between the parties, and there was no imperfection or ambiguity in the contract, evidence of parol representations made to the agent prior to the issuing of the policy could not be received to explain or qualify the contract. See, also, *Glendale Man. Co.* v. *Protection Ins. Co.*, 21 Conn. 19, 37; *Hough* v. *City Fire Ins. Co.*, 29 Conn. 10.

*New York Insurance Co.* v. *Thomas*, 3 Johns. Cases, 1, was an action upon a policy of insurance, and where parol evidence was offered to vary the terms of the instrument. The question was thus disposed of by Kent, J. :

"The next point is whether the parol proof be admissible to explain the contract, and, if it be, what is the effect, in the present case, of such proof.

"I know no rule better established than that parol evidence shall not be admitted to disannul or substantially vary or extend a written agreement. The admission of such testimony would be mischievous and inconvenient. Parol evidence is to be received in the case of an *ambiguitas latens*, to ascertain the identity of a person or thing, but before the parol evidence is to be received in such case, the latent ambiguity must be made out and shown to the court. In the present instance there is no ambiguity. The language of the contract, throughout, is consistent and explicit. This general rule of law has been particularly and emphatically applied to policies. (Skinn. 54.) And except in the special instance of explanations resulting from the usage of trade, they have never been allowed to be contradicted by parol agreements."

*Jennings* v. *Chenango Mut. Ins. Co.*, 2 Denio, 75, has long been a leading case. There it was held that conditions of insurance containing statements of the purpose for which the property insured is to be occupied, and of its situation as to other buildings, are warranties, and if untrue the policy is void,

though the variance be not material to the risk; and that parol evidence that the insured truly informed the agent of the insurer who prepared the application as to these particulars is not admissible. In the opinion, the language of Parker, C. J., in *Higginson* v. *Dall,* 13 Mass. 96, is quoted, that "policies, though not under seal, have nevertheless ever been deemed instruments of a solemn nature and subject to most of the rules of evidence which govern in the case of specialties. The policy is itself considered to be the contract between the parties, and whatever proposals are made or conversations had prior to the subscription, they are considered as waived, if not inserted in the policy, or contained in a memorandum annexed to it."

In *Fowler* v. *Metropolitan Ins. Co.,* 116 N. Y. 389, it was said :

"A long line of authorities has settled the law to be that when it is expressly provided that the premium on a life insurance policy shall be paid on or before a certain day, and in default thereof the policy shall be void, the non-payment of the premium upon the day named works a forfeiture. . . . The claim that such a provision, in a paid-up policy, is unconscionable and oppressive, and presents a case in which a court of equity should relieve from the forfeiture incurred by omission to make prompt payment of premiums, is not a new one. It has frequently been presented to the courts and has recently received very full consideration in this court in *Attorney General* v. *North American Life Insurance Co.,* 82 N. Y. 172, and in *People* v. *Knickerbocker Life Ins. Co.* It was decided in those cases that provisions in paid-up policies, issued in lieu of other policies on which notes had been given for premiums, that they should be void in case the interest on such notes was not paid, are not unconscionable, oppressive or usurious. In the first case cited, Judge Earl said : 'There are doubtless some decided cases which hold that such forfeiture should not be enforced, but I think the better rule is to uphold and enforce such contracts when free from fraud or mistake, just as the parties have made them.' And in *Douglass* v. *Knickerbocker L. Ins. Co.,* 83 N. Y. 492, it was said : 'It has generally been found most conducive to the general welfare to leave parties to make their own contracts,

and then enforce them as made, unless, on the ground of fraud, accident or mistake, ignorance, impossibility or necessity, relief can be granted against them.' . . . It would be impossible to sustain the claim that the statements and representations contained in the pamphlet issued by the company were to be regarded as affecting or modifying the strict terms. of the policy without disregarding the established rule of law that a written contract merges all prior and contemporaneous negotiations in reference to the same subject, and that the whole engagement of the parties and the extent and manner of their undertaking are embraced in the writing. This rule is the same in equity as at common law, and although a written agreement may be set aside or reformed, fraud or mistake must be shown to entitle a party to such relief. And it is never competent in an action upon a written contract to show that it was executed on the faith of a preceding parol stipulation not embraced in it."

In *Baumgartel* v. *The Providence Washington Ins. Co.*, 136 N. Y. 547, where defendant had issued to plaintiff a policy of fire insurance which contained a clause to the effect that, unless otherwise provided by agreement endorsed thereon, it should be void in case of other insurance on the property insured.; and it also provided that no agent of the company should have power to waive any provision or condition of the policy except such as by its terms might be the subject of agreement endorsed thereon or added thereto, and, as to those, that he should have no such power nor be deemed to have waived them unless in writing so endorsed or attached ; and where, in an action upon the policy, it appeared that, during its life, the plaintiff without notice to the defendant and without its knowledge or consent, obtained other insurance upon the property, and that thereafter he informed the agent, who had issued the policy, of this fact, and that the agent had replied, " All right; I will attend to it ; " but it did not appear that the plaintiff then had the policy in suit with him or afterwards applied to said agent for written consent to the other insurance ; it was *held* that knowledge of the agent of the subsequent insurance did not satisfy the condition of the policy, and that plaintiff having failed to comply

therewith, the policy was forfeited and void ; and also *held* that the statements of defendant's agent did not amount to a waiver of the conditions or authorize the application of the doctrine of estoppel.    It was said in the opinion :

" The stipulation with respect to further insurance is one of the conditions upon which, by the agreement of the parties, the liability of the defendant depended in the case of a loss during the term of the insurance.    The parties have also agreed upon the mode in which the condition could be complied with or waived, namely, by writing endorsed upon the policy in the form of a consent to the other insurance.    The agent had power to give this consent only in the manner prescribed by the contract.    But there is not in the case any proof, even of verbal consent by the agent, that the plaintiff might procure further and additional insurance.    . . .    ' The effect of such stipulations in a contract of insurance as well as the manner in which they may be modified or waived by agents of the company have been so thoroughly discussed and so clearly pointed out, that a reference to some of the more recent cases on the subject is all that is needful here.    *Allen* v. *German Ins. Co.*, 123 N. Y. 6 ; *Quinlan* v. *Providence W. Ins. Co.*, 133 Id. 356 ; *Messelback* v. *Norman*, 122 Id. 583 ; *Walsh* v. *Hartford Ins. Co.*, 73 Id. 5.' "

It is doubtless true that in several later cases the New York Court of Appeals seems to have departed from the principles of the previous cases, and to have held that the restrictions inserted in the contract upon the power of an agent to waive any condition, unless done in a particular manner, cannot be deemed to apply to those conditions which relate to the inception of the contract when it appears that the agent has delivered it and received the premiums *with full knowledge of the actual situation*.    To take the benefit of a contract *with full knowledge of all the facts* and attempt afterwards to defeat it, when called upon to perform, by asserting conditions relating to those facts, would be to claim that no contract was made, and thus operate as a fraud upon the other party. · *Robbins* v. *Springfield Fire Ins. Co.*, 149 N. Y. 484 ; *Wood* v. *American Fire Ins. Co.*, 149 N. Y. 382.    But see *Rohrbach* v. *German Fire Ins. Co.*, 62

N. Y. 63, and *Owens* v. *Holland Ins. Co.*, which are irreconcilable.

The fallacy of this view is disclosed in the phrases we have italicized. It was thereby assumed that the agent had full knowledge of all the facts, that such knowledge must be deemed to have been disclosed by the agent to his principal, and that, consequently, it would operate as a fraud upon the assured to plead a breach of the conditions. This mode of reasoning overlooks both the general principle that a written contract cannot be varied or defeated by parol evidence, and the express provision that no waiver shall be made by the agent except in writing endorsed on the policy. As we shall hereafter show when we come to consider the meaning and legal purport of the contract in suit, such express provision was intended to protect both parties from the dangers involved in disregarding the rule of evidence. The mischief is the same whether the condition turned upon facts existing at and before the time when the contract was made, or upon facts subsequently taking place.

In *Franklin Fire Ins. Co.* v. *Martin*, 41 New Jersey Law, 568, the facts were as follows: A policy described the property insured as "occupied as a dwelling and boarding house;" in fact, it was occupied as a country tavern, and there was kept for use a billiard table in a room back of the bar room. The property continued to be so used until the fire occurred. In the conditions of insurance, taverns were classified as extra hazardous, and billiard rooms were named as specially hazardous, each being subject to higher premiums than ordinarily hazardous rights. It was *held* by the New Jersey Court of Errors and Appeals that evidence that the application for insurance was prepared by the agent of the insurer, and that he knew, at the time of the application, that the property was occupied as a tavern, and that a billiard table was kept in it for use, could not be received for the purpose of showing that, under the description of a dwelling and boarding house, the parties intended to insure the premises as they were then, in fact, being used; that a written contract of insurance cannot be altered or varied by parol evidence of what occurred between the insured and the agent of the insurer at the time of effecting the insurance;

and that such evidence will not be received to raise an estoppel *in pais*, which shall conclude the insurer from setting up the defence that the policy was forfeited by a breach of the conditions of insurance.

In the opinion of the court, given by Judge Depue, there was a full examination of cases on the subject of the admissibility of parol evidence in actions on policies of insurance, and some of his observations are so weighty, and so applicable to the case before us, that we shall quote from them at some length :

" The leading case in New York is *Jennings* v. *Chenango Insurance Company*, 2 Denio, 75. This case held, in accordance with a series of cases, beginning with *Vandevoort* v. *Columbian Insurance Company*, 2 Caines, 155, that parol evidence that the insured truly informed the agent of the insurer, who prepared the application, as to the situation of the premises, was not competent to vary a warranty on that subject, or save the insured from the consequences of a breach of the contract of insurance. This case was recognized as good law by the courts of that State until the decision in *Plumb* v. *Cattaraugus Insurance Company*, 18 N. Y. 392, where such evidence was held by a divided court to be admissible, not to change the contract, but to produce the same result under the guise of an equitable estoppel. *Plumb* v. *Cattaraugus Insurance Company* was followed in *Rowley* v. *Empire Insurance Company*, 36 N. Y. 550. It was justly criticized and condemned as founded on erroneous views, by the Chief Justice in *Dewees* v. *Manhatten Insurance Company*, as reported in 6 Vroom, 336, and with *Rowley* v. *Empire Insurance Company*, has been greatly shaken by subsequent decisions in the same court, if it was not practically overruled by *Rohrbach* v. *Germania Insurance Company*, 62 N. Y. 47, 63. In *Maher* v. *Hibernia Insurance Company*, 67 N. Y. 283, reformation of the contract of insurance seems to have been regarded as the appropriate method of relief under such circumstances.

" The condition of the law on this important subject in that State is such that it would not be advisable to adopt it, or prudent to endeavor to follow the decisions of its courts. The discordant and irreconcilable decisions which have grown out of

the departure from the law as held in *Jennings* v. *Chenango Co. Ins. Co.* are cited by Judge Folger in *Van Schaick* v. *Niagara Fire Ins. Co.*, 68 N. Y. 438. Some of the conditions of the policy may be controlled by evidence of the knowledge of the parties at the time the insurance was effected, and others not; but no rule or principle has been promulgated for ascertaining, in advance of the litigation, what stipulations in the contract belong to the one class or the other—a condition of the law sure to result from the effort to deal with contracts of this kind. in disregard of established rules of law and acknowledged legal principles. . . .

"It is manifest that the theory that such parol evidence, though it may not be competent to change the written contract, may be received for the purpose of raising an estoppel *in pais*, is a mere evasion of the rule excluding parol testimony when offered to alter a written contract. . A party suing on a contract in an action at law must be conclusively presumed to be aware of what the contract contains, and the legal effect of his agreement is that its terms shall be complied with. Extrinsic evidence of the kind under consideration must entirely fail in its object, unless its purpose be to show that the contract expressed in the written policy was not, in reality, the contract as made. A defendant cannot be estopped from making the defence that the contract sued on is not his contract, or that his adversary has himself violated it in those particulars which are made conditions to his right under it, on the ground of negotiations and transactions occurring at the time the contract was entered into, unless the plaintiff is permitted to show from such sources that the contract, as put in writing, does not truly express the intention of the parties. The difficulty lies at the very threshold. An estoppel cannot arise except upon proof of a contract different from that contained in the written policy, and an inflexible rule of evidence forbids the introduction of such proof by parol testimony, when offered to vary or affect the terms of the written instrument.

"The cases usually cited for the proposition that a contract of insurance is excepted out of the class of written contracts with respect to the admissibility of parol evidence to vary or.

control the written contract, will be found on examination to be, to a large extent, those in which the proof has been received with a view to a reformation of the policy in equity, or to meet the defence that the contract was induced by false and fraudulent representations not embodied in the contract, or are the decisions of courts in which the legal and equitable jurisdictions are so blended that the functions of a court of equity have been transferred to the jury box. . . . ' The powers of agents of every kind of principals, to act for and bind their principals, are determined by the unvarying rule of ascertaining what authority is delegated to them. How the contract was effected, whether directly with the insurer or by the intervention of agents, is of no consequence. The question of the admissibility of the testimony does not relate to the method by which the contract was made. It concerns the rule of evidence by which the contract, however made, shall be interpreted.

" Upon principle, it is impossible to perceive on what ground such testimony should be received. A policy of insurance is a contract in writing, of such a nature as to be within the general rule of law that a contract in writing cannot be varied or altered by parol testimony. If it be ambiguous in its terms, parol evidence, such as would be competent to remove an ambiguity in other written contracts, may be resorted to for the purpose of explaining its meaning. If it incorrectly or imperfectly expresses the actual agreement of the parties, it may be reformed in equity. If strict compliance with the conditions of insurance, with respect to matters to be done by the insured after the contract has been concluded, has been waived, such waiver may, in general, be shown by extrinsic evidence, by parol. Further than this, it is not safe for a court of law to go. To except policies of insurance out of the class of contracts to which they belong, and deny them the protection of the rule of law that a contract which is put in writing shall not be altered or varied by parol evidence of the contract the parties intended to make, as distinguished from what appears, by the written contract, to be that which they have in fact made, is a violation of the principle that will open the door to the grossest frauds. . . . A court of law can do nothing but enforce

the contract as the parties have made it. The legal rule that
in courts of law the written contract shall be regarded as the
sole repository of the intentions of the parties, and that its
terms cannot be changed by parol testimony, is of the utmost
importance in the trial of jury cases, and can never be departed
from without the risk of disastrous consequences to the rights
of parties."

*Dewees* v. *Manhattan Ins. Co.*, 35 N. J. Law, 366, referred to
in the case just cited, reports an opinion by Chief Justice
Beasly, and from which we shall quote, as it contains, as we
think, an able and sound statement of the law on this important
subject:

"The contract between these litigants, on the point which
I shall discuss, is clear and unambiguous. The defendants
agreed to insure a building occupied as a country store, and the
stock of goods, consisting of the usual variety of such a store.
This, by the plain meaning of the terms, is a warranty on the
part of the insured that the building was used, at the date of
the agreement, for the purpose specified. It was a representa-
tion, on the face of the policy, touching the premises in ques-
tion, and which affected the risk; and such a representation,
according to all the authorities, amounts to a warranty. . . .
The cases are numerous and decisive upon the subject—so
much so, that it does not appear to me to be necessary to refer
to them in detail, as, in my opinion, the character of a represen-
tation of this kind is apparent upon its face. It can be in-
tended for no other purpose than to characterize the use of the
building at the date of the insurance; for, unless this be done,
there can be no restriction on the use of the property by the
insured, during the running of the risk. Unless this descrip-
tion has the force thus attributed to it, the premises could have
been used for any of the most hazardous purposes. A building
described in a policy as a dwelling house could, except for the
rule above stated, be converted into a mill or factory. I think
it is incontestably clear that the description of the use of the
premises in this case was meant to define the character of the
risk to be assumed by the defendants.

"But, besides this, it is plain that the written contract was

violated, in a fatal particular, by the assured. By the express terms of one of the stipulations of the insurance, it is declared that, if the premises should be used 'for the purpose of carrying on therein any trade or vocation, or for storing or keeping therein any articles, goods or merchandise denominated hazardous, or extra hazardous, or specially hazardous, in the second class of the classes of hazards annexed to this policy, etc., from thenceforth, so long as the same shall be so used, etc., the policy shall be of no force or effect.' Among the extra hazardous risks, that of keeping a 'private stable' is enunciated, and it was shown on the trial, and was not denied, that, at the date of the policy, and at the time of the fire, a part of the building insured was applied by the plaintiff to this use.

"It cannot be denied, then, that if we take into view these conditions of the case alone, the plaintiff's action must fall to the ground. He did an act which, by force of his written agreement, had the effect to suspend, temporarily, his insurance. As this fact, having this destructive effect, could not be disputed, it became necessary, in order to save the plaintiff's action, to avoid the effect of the written contract; and this burden was assumed, on the argument, by the counsel of the plaintiff. The position taken with this view was, that the policy was obtained for the plaintiff by the agents of the defendant, and that they knew that the building in question was, in part, used as a stable.

"The plaintiff's claim appears to be a meritorious one, and on this account, and in the hope that there might be found some legal ground on which to support this action, the case was allowed by me, at the circuit, to go to the jury, and the questions of law were reserved for this court. But the consideration which I have since given the matters involved has excluded the faintest idea that, upon legal principles, this suit can be successfully carried through. In my opinion, that end can be attained only by the sacrifice of legal rules which are settled, and are of the greatest importance. Let us look at the proposition to which we are asked to give our assent.

"The contract of these parties, as it has been committed to writing, is, that if the plaintiff shall keep a stable on the premises insured, for the time being, the policy shall be vacated.

But, it is said, the agents of the defendants who procured this contract were aware that the real contract designed to be made was, that the plaintiff might apply the premises to this use. This knowledge of the agent of the defendants, and which, it is contended, will bind the defendants, is to have the effect to vary the obligations of the written contract. Upon what principle can this be done? There is no pretense of any fraud in the procurement of this policy. The only ground that can be taken is, that the agent, knowing that the premises were to be, in part, used as a stable, should have so described the use in the policy. The assumption is, and must be, that the warranty, in its present form, was a mistake in the agent. But a mistake cannot be corrected, in conformity with our judicial system, in a court of law. No one can doubt that, in a proper case of this kind, an equitable remedy exists. 'There cannot be, at the present day,' says Mr. Justice Story, ' any serious doubt that a court of equity has authority to reform a contract, where there has been an omission of a material stipulation by mistake; and a policy of insurance is just as much within the reach of the principle as any other contract. *Andrews* v. *Essex Fire & Marine Ins. Co.,* 3 Mason, 10.'

" It is possible, therefore, that in this case, in equity the present contract might be reformed, so as to permit the plaintiff to keep his stable in this building; but I think it has never before been supposed that this end could be reached in this State, by proof before the jury in a trial at the circuit. The principle would cover a very wide field, for, if this mistake can be there corrected, so can every possible mistake. If the plaintiff can modify the stipulation with respect to the restricted use of the premises, on the plea of a mistake in the stipulation, on similar grounds it would be open to the company to modify the policy with respect to the amount insured. I am at a loss to see how, on the adoption of the principle claimed, we are to keep separate the functions of our legal and equitable tribunals. Nor do I think, if this court should sustain the present action, that it could be practicable to preserve, in any useful form, the great primary rule that written instruments are not to be varied or contradicted by parol evidence. The knowledge of the agent

in the present transaction is important only as showing what the tacit understanding of the contracting parties was. Suppose, instead of proof of such tacit understanding, the plaintiff had offered to make a stronger case by showing that the agent expressly agreed that the building might be used not only as a country store, as the policy stated, but also as a stable, and that the restraining stipulation did not apply to the extent expressed. Can any one doubt that, according to the practice and decisions in this State, such proof would have been rejected? A rule of law admitting such evidence would be a repeal of the principle, giving a controlling efficacy to written agreements. The memory and understanding of those present at the formation of the contract would be quite as potent as the written instrument.

"I have not found that it is anywhere supposed that this general rule which illegalizes parol evidence under the conditions in question has been relaxed with respect to contracts of insurance. Decisions of the utmost authority, both in England and in this country, propound this doctrine as applicable to policies in the clearest terms."

After citing a number of cases, the Chief Justice took notice of the case of *Plumb* v. *Cattaraugus Ins. Co.*, 18 N. Y. 392, in the following terms:

"In the case from New York here referred to, there was, in the application for the policy, a misdescription of the distance of the adjacent buildings from the premises insured, and to this defence the reply was, that the agent of the company had made the measurements, and had obtained the signature of the plaintiff, on the assurance 'that the application was all right and just as it should be.' The court decided that the declaration of the agent could not be offered for the purpose of altering or contradicting the written contract, but that it was admissible as an *estoppel in pais*. Now it is at once obvious that, by force of that view, the agreement in question was enforced, not in the sense of the written terms, but in the sense of the oral evidence, and that the practical result was precisely the same as though the instrument had been reformed in conformity to such evidence at the trial. I think there is no doubt that this appli-

cation of the doctrine of estoppel to written contracts is an entire novelty. In the long line of innumerable cases which have proceeded and been decided on the ground that parol evidence is not admissible as against a written instrument, no judge or counsel ever intimated, as it is believed, that the same result could be substantially attained by a resort to this circuity. It is true that, if there be a substantial ground in legal principle for its introduction, the fact that it is new will not debar from its adoption; but I have not been able to perceive the existence of such substantial ground. In my apprehension the doctrine can be made to appear plausible only by closing the eyes to the reason of the rule which rejects, in the presence of written contracts, evidence by parol. That reason is, that the common good requires that it shall be conclusively presumed in an action at law, in the absence of deceit, that the parties have committed their real understanding to writing. Hence it necessarily follows that all evidence merely oral is rejected, whose effect is to vary or contradict such expressed understandings. Such rejection arises from the consideration that oral testimony is unreliable in comparison with that which is written. It is idle to say that the estoppel, if permitted to operate, will prevent a fraud or inequitable result; most parol evidence contradictory of a written instrument has the same tendency; but such evidence is rejected not because, if true, it ought not to be received, but because the written instrument is the safer criterion of what was the real intention of the contracting parties. In the case now criticized, the party insured stipulated against the existence of buildings within a definite number of feet from the insured property; by the admission of parol testimony, this stipulation was restricted and limited in its effect. This result, no doubt, was strictly just, if we assume that the parol evidence was true; but, standing opposed to the written evidence, the law presumes the reverse. The alternative is unavoidable—it is a choice between that which is written and that which is unwritten. In the case cited, the effect of the rule adopted by the court was to give a different effect to the written terms from that which they intrinsically possessed—a result induced by the admission of oral evidence. This, I cannot but think, was a

palpable alteration of the agreement of the parties. **The mistake of the court appears to have been in regarding simply the legal effect of the facts** which were proved by parol. **Receiving** that testimony into the case, a clear estoppel was made out; but the error consisted in the circumstance **that such oral** evidence was, on rules well settled, inadmissible. **The question** presented was purely one as to a rule of evidence, **but it was** treated as a problem relating to the application of **legal principles** to an admitted state of facts. The case was **not decided** by a unanimous court, three judges dissented, and, **in my judgment, that dissent was based on satisfactory grounds.** . . . The facts now before us do not present the elements **of an estoppel.** Such a defence rests on a misconception **as to a state** of facts, induced by the party against whom it **is set up. The** person who seeks to take advantage of it must **have been misled** by the words or conduct of another. Now, in the present case, the agent did not make any statement nor did he do anything which led the plaintiff to alter his condition. The most that can be laid to his charge is that from carelessness he omitted properly to describe the use of the premises described. But this was not a misstatement of a fact on which the plaintiff acted, because the plaintiff was aware of the circumstance that the building was put to another use. The alleged error in the description is plain on the face of the policy, and the law incontestably charges the defendant with knowledge of the meaning and legal effect of his own written contract. To found an estoppel on the ignorance of the plaintiff of the plainly expressed meaning of his own contract would be absurd."

In Pennsylvania, it has always been held that courts of law will not permit the terms of written contracts to be varied or altered by parol evidence of what took place at or before the time the contracts were made; and that policies of insurance are within the protection of the rule.

Thus, when it was stipulated in the conditions of insurance that a false description of the property insured should avoid the policy, it was held that a misdescription defeated the plaintiff's right to recover under it, though the statements were known to be false by the insurer's agent, who prepared the description,

and informed the plaintiff that in that respect the description was immaterial. *Smith* v. *Cash Mut. Ins. Co.*, 24 Penn. St. 320; *Columbia Ins. Co.* v. *Cooper*, 50 Penn. St. 331.

In *Commonwealth Mutual Fire Insurance Company* v. *Huntzinger*, 98 Penn. St. 41, the subject was examined at length and the previous cases considered, and it was held that mere mutual knowledge by the assured and the agent of the falsity of a fact warranted is entirely inadequate to induce a reformation of the policy so as to make it conform with the truth; that it is rather evidence of guilty collusion between the agent and the assured, from which the latter can derive no advantage. "The conditions of insurance," said the court, "provide that notice of additional insurance, or of any change in existing insurance, shall be given to the company by the insured in writing, and shall be acknowledged in writing by the secretary; and no other notice shall be binding or have any force against the company. In absence of evidence of waiver of the notice required in this stipulation, we do not think the jury would be justified in inferring that the knowledge of the agent will bind the principal of notice of subsequent insurance or surrender of previous insurance. The parties agreed that written notice should be given, and in like manner acknowledged by the secretary; mere knowledge of an agent is not the equivalent of that."

That the law enunciated in these and numerous other cases in Pennsylvania was not overturned by the case of *Kalmutz* v. *Northern Mutual Ins. Co.*, 186 Penn. St. 571, as claimed in the brief of defendant in error, will appear on examining the facts of that case and the reasoning of the court.

The opinion shows that the court refused to hold that what was alleged to have taken place at the time the contract was entered into might be received to change the legal effect of the policy, Sterrett, C. J., saying:

"The policy in suit contains this provision as to other insurance: 'Policies of all other insurance upon property herein described —whether made prior or subsequent to the date hereof—must be indorsed on this policy, otherwise the insurance shall be void.' The existence of such other insurance of which no endorsement was made on the policy, was conceded; and, in order to avoid

the effect of the condition above quoted, the plaintiff undertook to prove that the defendant company, by its own acts, had waived the condition, and was thereby estopped from setting it up as a bar to his recovery.   As is usual in such cases, there was more. or less conflicting testimony as to what passed between the plaintiff and the company's agent at the inception of the contract.   In the court below, as well as here, it was forcibly contended on plaintiff's behalf that the testimony referred to was sufficient to warrant the jury in finding such facts as legally constitute an estoppel; *but, inasmuch as the record discloses other undisputed evidence which necessarily leads to the same conclusion*, it is unnecessary to consider in detail the conflicting testimony that was submitted to the jury on that question.   The policy in suit was issued in April, 1894, and the last assessment thereon was made in October following.   Defendant company's secretary testified that he had notice of the additional insurance on the first Wednesday of November, 1894.   Notwithstanding that notice to the company, the policy was neither recalled nor cancelled; the premiums or assessments collected were not returned, nor was any effort made to return the premium note given by plaintiff, binding him to pay the premiums at such times and in such manner as the company's directors might by law require.   These facts were admitted; and if, as the authorities appear to hold, they operated as an estoppel, it will be unnecessary to consume time in the consideration of other questions sought to be raised by several of the specifications of error."

The court then cited *Elliott* v. *Lycoming County Ins. Co.*, 66 Penn. St. 22, 26, where Justice Sharswood said:

"Undoubtedly, if the company, after notice or knowledge of the over insurance, treated the contract as subsisting, by making and collecting assessments under it from the insured, they could not afterwards set up its forfeiture.   It would be an estoppel, which is the true ground upon which the doctrine of waiver in such cases rests.   .   .   .   Enough has been said to show that upon the undisputed evidence in the case the learned trial judge would have been warranted in holding, as matter of law, that the defendant was estopped from setting up the con-

dition above quoted as a bar to plaintiffs' claim, and in instructing the jury accordingly."

As, therefore, there was no limitation put in the policy upon the powers of the company's secretary, and as the company, after having received notice of the existence of other insurance, declined to avail itself of the right to rescind the contract, but, on the contrary, elected to enforce payments under the terms of the policy as a subsisting contract, and these facts having been made to appear by undisputed evidence, the court would seem to have been justified in applying the doctrine of estoppel.

It must be conceded that it is shown, in the able brief of the defendant in error, that, in several of the States, the courts appear to have departed from well-settled doctrines, in respect both to the incompetency of parol evidence to alter written contracts, and to the binding effect of stipulations in policies restricting the authority of the company's agents. The nature of the reasoning on which such courts have proceeded will receive our consideration when we come to discuss the particular terms of the contract before us.

Leaving, then, the state courts, let us inquire what is the voice of the Federal authorities.

We do not consider it necessary or profitable to examine in detail the decisions of the Circuit Courts or of the Circuit Courts of Appeals. It is sufficient, for our present purpose, to say that the Circuit Court of Appeals for the Seventh Circuit has held consistently to the doctrines on this subject laid down by the English and American courts generally, *United Firemen's Ins. Co.* v. *Thomas*, 82 Fed. Rep. 406, and that the Court of Appeals for the Eighth Circuit, in the present case, has, by a majority of its members, adopted and applied the view that a written contract may, in an action at law, be changed by parol evidence, and that such clauses as restrict the power of agents of insurance companies to contract otherwise than by some writing should be given effect, if at all, as they respect such modifications of a policy as are made or attempted to be made after it has been delivered and taken effect as a valid instrument, and should not be considered as having relation to acts done by the company or its agents at the inception of the contract. 101 Fed. Rep. 77.

In such divergence of decisions, we have deemed it proper to have the present case brought before us by a writ of certiorari.

As to the fundamental rule, that written contracts cannot be modified or changed by parol evidence, unless in cases where the contracts are vitiated by fraud or mutual mistake, we deem it sufficient to say that it has been treated by this court as invariable and salutary.   The rule itself and the reasons on which it is based are adequately stated in the citations already given from the standard works of Starkie and Greenleaf.

Policies of fire insurance in writing have always been held by this court to be within the protection of this rule.

The first case to be examined is *Carpenter* v. *Providence-Washington Ins. Co.*, 16 Pet. 495.   The importance of this case is great, because, if the conclusion there reached was sound when expressed, and if it has not been overruled by our subsequent decisions, it is decisive of the case before us.

And first, as to the facts of that case, in so far as they resemble those with which we have now to deal.   They were thus stated by Mr. Justice Story, who delivered the unanimous opinion of the court:

" This is a writ of error to the Circuit Court for the District of Rhode Island.   The original action was brought by Carpenter, the plaintiff in error, against the Providence-Washington Insurance Company, the defendants in error, upon a policy of insurance underwritten by the insurance company of fifteen thousand dollars ' on the Glenco Cotton Factory, in the State of New York,' owned by Carpenter, against loss or damage by fire.   The policy was dated on the 27th of September, 1838, and was to endure for one year.   Among other clauses in the policy are the following : ' And provided further, that in case the insured *shall have already any other insurance on the property hereby insured, not notified to this corporation and mentioned or endorsed upon this policy, then* this insurance shall be void and of no effect.'   ' And if the said insured or his assigns *shall hereafter make* any other insurance on the same property, and shall not with all reasonable diligence give notice thereof to this corporation, and have the. same endorsed on this instrument, or otherwise acknowledged by them in writing, this policy

shall cease and be of no further effect. And in case of any other insurance upon the property hereby insured, whether prior or subsequent to the date of this policy, the insured shall not in case of loss or damage be entitled to demand or recover on this policy any greater portion of the loss or damage sustained than the amount hereby insured shall bear to the whole amount insured on the said property.' . . . Annexed to the policy are the proposals and conditions on which the policy is asserted to be made, and among them is the following: 'Notice of all *previous* insurances upon property insured by this company shall be given to them, and endorsed on the policy, or otherwise acknowledged by the company in writing, at or before the time of their making insurance thereon, otherwise the policy made by this company shall be of no effect.'

" The declaration averred that during the continuances of the policy he, Carpenter, was the owner of the property by the policy insured, and was interested in said property to the whole amount so insured by the company; and that on the 9th of April, 1839, the factory was totally destroyed by fire, of which the company had due notice and proof. The cause came on for trial on the general issue, and a verdict was found for the defendants. The plaintiff took a bill of exception to certain instructions refused, and other instructions given by the court in certain matters of law arising out of the facts in proof at the trial; and judgment having been given upon the verdict for the defendants, the present writ of error has been brought to ascertain the validity of these exceptions. . . .

" From the 17th of October, 1836, to the 6th of December, 1837, Henry M. Wheeler and Samuel G. Wheeler continued to own the factory in equal moieties, and transacted business under the firm of Henry M. Wheeler & Co. On that day Samuel G. Wheeler sold and conveyed his moiety to Carpenter. On the 18th of April, 1838, Henry M. Wheeler sold and conveyed his moiety to Carpenter, who thus became the sole owner of the entire property. The last conveyance declared the property subject to a mortgage on the premises from Henry M. Wheeler and wife, dated in June, 1835, to Epenetus Reed, on which there was then due six thousand dollars, which Carpenter

assumed to pay.   There had been a prior policy on the premises in the Washington Insurance office, which, upon Carpenter's becoming the sole owner, the company agreed to continue for account of Carpenter, and in case of loss, the amount to be paid to him.   That policy expired on the 27th of September, 1838, the day on which the policy, upon which the present suit is brought, was effected.   It is proper further to state that other policies on the same factory had been effected and renewed from time to time, from December 12, 1836, for the benefit of the successive owners thereof, by another insurance company in Providence, called the American Insurance Company; and among these was a policy effected, by way of renewal, on the 14th of December, 1837, in the name of Henry M. Wheeler & Co., for six thousand dollars, for the benefit of Henry M. Wheeler and Carpenter, (who were then the joint owners thereof,) payable in case of loss to Epenetus Reed.   The sale by Henry M. Wheeler to Carpenter, on the 18th of April, 1838, of his moiety having been notified to the American Insurance Company, the latter agreed to the assignment; and the policy thenceforth became a policy for Carpenter, payable in case of loss to Epenetus Reed.   And on the 23d of May, 1838, Carpenter, transferred all his interest in the policy to Epenetus Reed.   The policy thus effected on the 14th of December, 1837, in the American Insurance Company was, as the Washington Insurance Company assert, not notified to them at the time of effecting the policy made on the 25th of September following, and declared upon in the present suit; nor was the same ever mentioned in, or endorsed upon the said policy; and upon this account the company insist that the present policy is, pursuant to the stipulations contained therein, utterly void.   Subsequently, viz., on the 11th day of December, 1838, the American Insurance Company renewed the policy of the 14th of December, 1837, for Carpenter, and at his request, for one year.   This renewed policy was never notified to the Washington Insurance Company, nor acknowledged by them in writing; nor does it appear ever to have been actually assigned to Epenetus Reed, down to the period of the loss of the factory by fire.   On this account also, the Washington Insurance Company insist that

their policy of the previous 27th of September, 1838, is, according to the stipulation therein contained, utterly void.

"It seems to have been admitted, although not directly proved, that a suit was brought upon the policy of the 14th of December, 1837, at the American Insurance office, after the loss, by Carpenter, as trustee of or for the benefit of Reed, for the amount of the six thousand dollars insured thereby; and that at the November term, 1839, of the Circuit Court, the company set up as a defence that there was a material misrepresentation of the cost and value of the property in the factory insured made to them at the time of the original insurance; and it being intimated by the court that if such was the fact it would avoid the policy, the plaintiff acquiesced in that decision, and discontinued or withdrew the action before verdict.

"The instructions prayed and refused, and also the instructions actually given by the court, are fully set forth in the record. It does not seem important to the opinion, which we are to pronounce, to recite them at large, *in totidem verbis*, since the points on which they turn admit of a simple and exact exposition."

After disposing of the first instruction, which does not relate to our present inquiries, the court said:

"The second instruction asked proceeds upon the ground that although the policy of the American Insurance Company of the 6th of December, 1836, was good upon its face yet if, in point of fact, it was procured by a material misrepresentation by the owners of the cost and value of the premises insured, it was deemed to be utterly null and void, and therefore, as a null and void policy, notice thereof need not have been given to the Washington Insurance Company at the time of underwriting the policy declared.

"The court refused to give the instruction; and, on the contrary, instructed the jury that if the policy of the American Insurance Company was, at the time when that at the Washington Insurance office was made, treated by all the parties thereto as a subsisting and valid policy, and had never, in fact, been avoided, but was still held by the assured as valid, then, that notice thereof ought to have been given to the Washing-

ton Insurance Company, and if it was not, the policy declared on was void.   We are of opinion that the instruction, as asked, was properly refused, and that given was correct."

After discussing the question, the court added the following observations :

"Indeed, we are not prepared to say that the court might not have gone further, and have held that a policy—existing and in the hands of the insured, and not utterly void upon its very face, without any reference whatever to extrinsic facts— should have been notified to the underwriters, even although by proofs afforded by such extrinsic facts it might be held in its very origin and concoction a nullity.

"And this leads us to say a few words upon the nature and importance and sound policy of the clauses in fire policies, respecting notice of prior and subsequent policies.   They are designed to enable the underwriters, who are almost necessarily ignorant of many facts which might naturally affect their rights and interests, to judge whether they ought to insure at all, or for what premium; and to ascertain whether there still remains any such substantial interest of the assured in the premises insured as will guaranty on his part vigilance, care and strenuous exertions to preserve the property.   To quote the language of this court in the passage already cited, the underwriters do not rely so much upon the principles as upon the interest of the assured.   Besides, in these policies there is an express provision that in cases of any prior or subsequent insurances, the underwriters are only to be liable for a ratable proportion of the loss or damage as the amount insured by them bears to the whole amount insured thereon.   So that it constitutes a very important ingredient in ascertaining the amount which they are liable to contribute towards any loss ; and whether there be any other insurance or not upon the property, is a fact perfectly known to the insured, and not easily or ordinarily within the means of knowledge of the underwriters.

"The public, too, have an interest in maintaining the validity of these clauses, and giving them full operation and effect. They have a tendency to keep premiums down to the lowest rates, and to uphold institutions of this sort, so essential in the

present state of our country for the protection of the vast interests embarked in manufactures and on consignments of goods in warehouses. If these clauses are to be construed with a close and scrutinizing jealousy, when they may be complied with in all cases by ordinary good faith and ordinary diligence on the part of the insured, the effect will be to discourage the establishment of fire insurance companies, or to restrict their operations to cases where the parties and the premises are within the personal observation and knowledge of the underwriters. Such a course would necessarily have a tendency to enhance premiums, and to make it difficult to obtain insurance where the parties live, or the property is situate, at a distance from the place where the insurance is sought. But be these considerations as they may, we see no reason why, as these clauses are a known part of the stipulations of the policy, they ought not to receive a fair and reasonable interpretation according to their terms and obvious import. The insured has no right to complain, for he assents to comply with all the stipulations on his side, in order to entitle himself to the benefit of the contract, which upon reason or principle, he has no right to ask the court to dispense with the performance of his own part of the agreement, and yet to bind the other party to obligations, which, but for their stipulations, would not have been entered into.

" We are, then, of opinion that there is no error in the second instruction. On the contrary, there is strong ground to contend that the stipulations in the policy as to notice of any prior and subsequent policies, were designed to apply to all cases of policies then existing in point of fact, without any inquiry into their original validity and effect, or whether they might be void or voidable.

" The third instruction prayed the court to instruct the jury that if the Washington Insurance Company had notice, in fact, of the existence of the policy in the American office, that ' was in law a compliance with the terms of the policy.' The court refused to give the instruction as prayed, but instructed the jury that, at law, whatever might be the case in equity, mere parol notice of such insurance was not, of itself, sufficient to

comply with the requirements of the policy declared on; but that it was necessary, in case of any such prior policy, that the same should not only be notified to the company, but should be mentioned or endorsed upon the policy; otherwise the insurance was to be void and of no effect.

"We think this instruction was perfectly correct. It merely expresses the very language and sense of the stipulation of the policy; and it can never be properly said that the stipulation in the policy is complied with, when there has been no such mention or endorsement as it positively requires, and without which it declares the policy shall henceforth be null and of no effect."

Two propositions, then, are clearly established by this decision: (1) That where a policy provides that notice shall be given of any *prior* or *subsequent* insurance, otherwise the policy to be void, such a provision is reasonable and constitutes a condition, the breach of which will avoid the policy; (2) That where the policy provides that notice of *prior* or *subsequent* insurance must be given by endorsement upon the policy or by other writing, such provision is reasonable and one competent for the parties to agree upon, and constitutes a condition, the breach of which will avoid the policy.

We are next to inquire whether this decision has been overruled, or whether it remains as an authoritative declaration of the law.

Shortly after the case was decided at law, it appears, that an effort was made by said Carpenter to invoke the aid of a court of equity to enable him to avoid the effect of his own disregard of the conditions contained in the policy. *Carpenter* v. *Providence - Washington Insurance Company*, 4 How. 185.

This court held, affirming the Circuit Court of the United States for the District of Rhode Island, sitting in equity, that, under the facts disclosed by the pleadings and evidence, the complainant was not entitled to equitable relief.

"It is a matter of regret that so great a loss, which the plaintiff and those under whom the claims intended to guard against by insurance, should happen entirely without indemnity. But it is to be remembered that the defendant gave abundant and

repeated notice to him, in writing and print in the policy itself, as well as other ways, that they would not take any risks on property where it was insured beyond a certain ratio of its full value, unless the circumstances were made known to them, and the additional policy recognized in writing, so as to avoid any mistake, or accident, or want of deliberate attention to the subject. If the plaintiff, after all this, omitted to comply with so substantial a provision in the contract itself, as we are bound to believe on the evidence now offered, we see no way, equitably or legally, to prevent the consequences from falling on himself, rather than others, being the result either of his own neglect, or that of some of the agents he employed. An adherence to such important rule is peculiarly necessary for the protection of absent stockholders, often interested exclusively in insurance companies; and so far from its being unconscientious to enforce them, when their existence is well known, and when the risk has been increased without conforming to them, it is the only and just safeguard of all concerned in such institutions."

*Carpenter* v. *Providence Insurance Co.*, 16 Pet. 495, has been frequently referred to as an authority in subsequent cases on points collateral to the one we are now considering. *Taylor* v. *Benham*, 5 How. 233, 260; *Russell* v. *Southward*, 12 How. 139, 145; *Oates* v. *National Bank*, 100 U. S. 239, 246; *Burgess* v. *Seligman*, 107 U. S. 20, 34.

In *Phœnix Life Insurance Co.* v. *Raddin*, 120 U. S. 183, 189, we find *Carpenter* v. *Providence Insurance Co.* cited, per Mr. Justice Gray, as an authority for the proposition that "the parties may by their contract make material a fact that would otherwise be immaterial, or make immaterial a fact that would otherwise be material. Whether there is other insurance on the same subject, and whether such insurance has been applied for and refused, are material facts, at least when statements regarding them are required by the insurers as part of the basis of the contract."

It is not pretended in the opinion of the majority in the Circuit Court of Appeals in the present case that the case of *Carpenter* v. *Providence - Washington Insurance Co.* has been

modified or overruled by this court, but the cases relied on by that court are wholly decisions of several state courts and of some of the Circuit Courts.   Nor is it claimed by the learned counsel for the defendant in error that the *Carpenter* case has been formally overruled or modified by this court.   He, however, does cite three decisions of this court which, as he views them, should be regarded as abandoning the doctrines of that case, viz., *Insurance Co.* v. *Wilkinson*, 13 Wall. 222; *Eames* v. *Home Insurance Co.*, 94 U. S. 621, and *Insurance Co.* v. *Norton*, 96 U. S. 234.

These cases must, therefore, receive our attention.   What, then, was the case of *Insurance Co.* v. *Wilkinson?*   That was a case where the agent of a life insurance company had inserted in the application a representation of the age of the mother of the assured at the time of her death, which was untrue, but which the agent himself obtained from a third person and inserted without the assent of the assured.   It was held that this untrue statement contained in the application did not invalidate the policy; that permitting verbal testimony to show how this untrue statement found its way into the application did not contradict the written contract sued on, but proceeded on the ground that this statement was not that of the assured.   The trial court said to the jury that if the applicant did not know at what age her mother died, and did not state it, and declined to state it, and that her age was inserted by the agent upon statements made to him by others in answer to inquiries *he* made of them, and upon the strength of his own judgment, based upon data thus obtained, it was no defence to the action to show that the agent was mistaken.   The case, as reported, does not disclose that the plaintiff's testimony as to the way in which the untrue statement was put in the application was contradicted or denied by the company.   It may therefore be presumed that the plaintiff's case, in that respect, was made out by undisputed evidence.   And it would seem, such being the state of facts, that this court had reason to hold that the untrue statement was not made by the assured, and that it would operate as a fraud on the plaintiff if he were not permitted to show this fact, which was not a fact or statement contained in

the policy sued on, but an extrinsic fact or statement contained in the application. The defence made upon that statement was, in legal effect, a denial of the execution of the statement—a defence that can always be sustained by parol evidence.

However this may have been, we are unwilling to have the case regarded as one overthrowing a general rule of evidence. Some of the remarks contained in the opinion might seem to bear that interpretation, but not necessarily so.

That Mr. Justice Miller did not intend, in the case of *Insurance Company* v. *Wilkinson*, to lay down a new rule of evidence in insurance cases, is clearly shown in the subsequent case of *Insurance Co.* v. *Lyman*, 15 Wall. 664, where the opinion was delivered by the same learned justice, who used the following language:

" Undoubtedly a valid verbal contract for insurance may be made, and when it is relied on, and is unembarrassed by any written contract for the same insurance, it can be proved and become the foundation of a recovery as in all other cases where contracts may be made either by parol or in writing.

" But it is also true that when there is a written contract of insurance it must have the same effect as the adopted mode of expressing what the contract is, that it was in other classes of contract, and must have the same effect in excluding parol testimony in its application to it that other written instruments have.

" Counsel for the defendants in error here relies on two propositions, namely, that the policy, though executed January 5, is really but the expression of a verbal contract, made the 31st day of December previous, and that the loss of the vessel between those two dates does not invalidate the contract, though known to the insured and kept secret from the insurers; and, secondly, that they can abandon the written contract altogether and recover on the parol contract.

" We do not think that either of these propositions is sound. Whatever may have been the precise facts concerning the negotiations for a renewal of the insurance previous to the execution of the policy, they evidently had reference to a written contract, to be made by the company. When the company

came to make this instrument they were entitled to the information which the plaintiff had of the loss of the vessel. If then they had made the policy, it would have bound them, and no question could have been raised of the validity of the instrument or of fraud practiced by the insured.   On the other hand, if they had refused to make a policy, no injury would have been done to the plaintiffs, and they would then have stood on their parol contract, if they had one, and did not need a policy procured by fraudulent concealment of a material fact at the time it was executed and the premium paid.

"To permit the plaintiffs, therefore, to prove by parol that the contract of insurance was actually made before the loss occurred, though executed and delivered and paid for afterward, is to contradict and vary the terms of the policy in a matter material to the contract, which we understand to be opposed to the rule on that subject in the law of Louisiana as well as at the common law.

"We think it equally clear that the terms of the contract having been reduced to writing, signed by one party and accepted by the other at the time the premium of insurance was paid, neither party can abandon that instrument, as of no value in ascertaining what the contract was, and resort to the verbal negotiations which were preliminary to its execution, for that purpose.   The doctrine is too well settled that all previous negotiations and verbal statements are merged and excluded when the parties assent to a written instrument as expressing the agreement."

*Eames v. Home Insurance Company,* 94 U. S. 621, is another case relied on as showing that the general rule of evidence was not applicable in insurance cases.   But that was the case of a bill in equity filed against an insurance company of New York to require said company to issue to the complainants a policy of insurance against loss or damage by fire, in pursuance of a contract for that purpose alleged to have been made with their agents in Illinois.   It was made to appear that the terms of a contract for insurance upon property which was destroyed by fire before the policy was received had been agreed upon.   This agreement was manifested by an application signed by the

complainant, and in several letters which had passed between the local agent and the general agent of the company, and between the complainant and the local agent. The report of the case states that there was an agreement as to certain facts by the attorneys in the cause, but what those facts were does not distinctly appear in the report. However, all that can be claimed for the case is that this court considered, from the agreement as to facts between the attorneys and from the application and the several letters between the agents and the complainant, that a case was made out justifying a court of equity to decree that complainant was entitled to a policy of insurance to be issued for the amount and at the premium shown by the proofs. What was the scope of the authority of the agents who prepared the application and conducted the correspondence does not appear, but the court seems to have assumed that it sufficiently appeared that the agents had authority to act as they did. It is not preceived that this case has any valid application to the case now before us, beyond apparently holding, with *Insurance Company* v. *Wilkinson*, in 13 Wall., that it may be shown by parol that a statement which purports to have been made by an applicant for insurance was not, in point of fact, his statement, but was really that of the agent.

The next case relied on is *Insurance Co.* v. *Norton*, 96 U. S. 234, in which it was held by a majority of this court that an insurance company may waive any condition of a policy inserted therein for its benefit. As to this proposition there was, and could have been, no disagreement among the judges, but the difference arose over the sufficiency of the evidence to show the waiver. The question really was whether the company's agent had authority to extend the payment of a premium note, notwithstanding a provision in the policy that a failure to pay the note at maturity would incur a failure of the policy, and a declaration that the agents of the company were not authorized to make, alter or abrogate contracts or waive forfeitures. It was held by the majority that a waiver by the company of both these conditions might be shown by admitting evidence as to the practice of the company in allowing its agents to extend the

time for payment of premiums and of notes given for premiums, as indicative of the power given to those agents, and that error was not committed by submitting to the jury, upon such evidence, to find whether the defendants had or had not authorized its agent to make an extension in this case. In speaking for the majority, Mr. Justice Bradley said:

"The written agreement of the parties, as embodied in the policy and the endorsement thereon, as well as in the notes and the receipt given therefor, was undoubtedly to the express purport that a failure to pay the notes at maturity would incur a forfeiture of the policy. It also contained an express declaration that the agents of the company were not authorized to make, alter or abrogate contracts or waive forfeiture. And those terms, had the company so chosen, it could have insisted on. But a party always has the option to waive a condition or stipulation in his own favor. The company was not bound to insist upon a forfeiture, though incurred, but may waive it. : . . That the company did authorize its agents to take notes, instead of money for premiums, is perfectly evident from its constant practice of receiving such notes when taken by them. That it authorized them to grant indulgence on these notes, if the evidence is to be believed, is also apparent from like practice. It acquiesced in and ratified their acts in this behalf."

Mr. Justice Strong, speaking for the dissenting parties, said:

"The insurance effected by the policy became forfeited by the non-payment *ad diem* of the premium note; the policy then ceased to be a binding contract. It was so expressly stipulated in the instrument. Admitting that the company could afterwards elect to treat the policy as still in force, or, in other words, could waive the forfeiture, the local agent could not, unless he was so authorized by his principals. The policy declared that agents should not have authority to make such waivers. And there is no evidence in this case that the company gave to the agent parol authority to waive a forfeiture after it had occurred. They had ratified his acts extending the time of payment of premium notes, when the extension was made before the notes fell due. But no practice of the company sanctioned any act of

its agent, done after a policy had expired, by which new life was given to a dead contract."

Whatever may be thought of these divergent views, it is clear that the facts of that case are widely different from those here under consideration, where there is no evidence whatever of a waiver by the company, or of authority to the agent, express or implied, from a course of practice by the company. Here, the company "has chosen," in the language of Mr. Justice Bradley, "to insist upon the terms of the written contract."

The subject of waiver by agents was further considered in the case of *Insurance Co.* v. *Wolff*, 95 U. S. 326, when the unanimous opinion of the court was delivered by Mr. Justice Field:

"By the residence of the insured within the prohibited district of country during the period designated in the policy without the previous consent of the company, and the failure to pay the annual premium when it became due, the policy, by its express terms, was forfeited, and the company relieved from liability, unless the forfeiture was waived by the action of the company, or of its agents authorized to represent it in that particular."

"The waiver of the forfeiture for the non-payment of the premium due on the 1st of November, 1872, is alleged on the ground that the premium was subsequently paid to an agent of the company, he delivering its receipt for the same, signed by its secretary and countersigned by the manager of the local office, the plaintiff contending that the company, by its previous general course of dealing with its agents, and its practice with respect to the policy in suit, had authorized the premiums to be paid and the agent to receive the same after they became due, and thus had waived any right to a strict compliance with the terms of the policy as to the payment of premiums.

"The waiver of the forfeiture arising from the residence within the prohibited district between the 1st of July and November, without the previous consent of the company, is also alleged from the subsequent payment of the premiums and its receipt by the local agent, the plaintiff contending that the premium was received with knowledge by the agent of the

previous residence of the insured within the prohibited district. . . .

"The conditions mentioned in the policy could, of course, be waived by the company, either before or after they were broken; they were inserted for its benefit, and it depended on its pleasure whether they should be enforced. The difficulty in this case, and in nearly all cases where a waiver is alleged in the absence of written proof of the fact, arises from a consideration of the effect to be given to the acts of agents of the company in their dealings with the assured. Of course, such agents, if they bind the company, must have authority to waive a compliance with the conditions upon the breach of which the forfeiture is claimed, or to waive the forfeiture when incurred, or their acts waiving such compliance or forfeiture must be subsequently approved by the company. The law of agency is the same, whether it be applied to the act of an agent undertaking to continue a policy of insurance or to any other act for which his principal is sought to be held responsible. . . .

"The company, notwithstanding the provision in the policy that its agents were not authorized to waive the forfeitures, sent to them renewal receipts signed by its secretary, to be used when countersigned by its local manager and cashier, leaving their use subject entirely to the judgment of the local agent. The propriety of their use, in the absence of any fraud in the matter, could not afterwards be questioned by the company. . . . So far, then, as the waiver of the forfeiture incurred for non-payment of the premiums is concerned, it is clear that the company, by its course of dealing, had, notwithstanding the provision of the policy, left the matter to be determined by the local agent, to whom the renewal receipts were entrusted.

"But so far as a forfeiture arose from the residence of the insured within the prohibited district, the case is different. There is nothing in the acts of the company which goes to show that it ever authorized its agents to waive a forfeiture thus incurred, or that it ever knew of any residence of the insured within the prohibited district until informed of his death there. In every case where premiums were received after the day they were payable, the fact that a forfeiture had been incurred was

made known to the company, from the date of its payment, and the retention of the money constituted a waiver of the forfeiture; but no information of a forfeiture on any other ground was imparted by the date of each payment. The agent receiving the premiums, in the case at bar, testified that he knew nothing of the residence of the insured within the prohibited district, and the evidence in conflict with his testimony was slight. He knew that the insured had a place of business there, and that he was permitted to make occasional visits there within that period, and to reside there at other periods. Everything produced as evidence of knowledge of residence within the proscribed district is consistent with these occasional visits and residence at other times than during the excepted period.

"But, even if the agent knew the fact of residence within the excepted period, he could not waive the forfeiture thus incurred without authority from the company. The policy declared that he was not authorized to waive forfeitures; and to that provision effect must be given, except so far as the subsequent acts of the company permitted it to be disregarded. There is no evidence that the company in any way, directly or indirectly, sanctioned a disregard of the provision with respect to any forfeitures, except such as occurred from non-payment of premiums. As soon as it was informed of the residence of the insured within the prohibited district, it directed a return of the premium subsequently paid. It would be against reason to give to the receipt of the premium by the agent, under the circumstances stated, the efficacy claimed. The court, in its instructions, treated the receipt of the premium by the agent, with knowledge of the previous residence of the insured within the prohibited district, if the agent had said knowledge, as itself a sufficient waiver of the forfeiture incurred, without any evidence of the action of the company when informed of such residence; and in this respect we think the court erred. It is essential that the company should have had some knowledge of the forfeiture, before it can be held to have waived it. It is true that, where an agent is charged with the collection of premiums upon policies, it will be presumed that he informs the company of any circumstances coming to his knowledge affect-

ing its liability; and if subsequently the premiums are received by the company without objection, any forfeiture incurred will be presumed to be waived. But here there was no ground for any inference of this kind from the subsequent action or silence of the company. There was no evidence of a disregard of the condition as to the residence of the insured in any previous year, and, consequently, there could be no inference of a waiver of its breach from a subsequent retention of the premium paid. This was a case where immediate enforcement of the forfeiture incurred was directed when information was received that the condition of the policy in that respect had been broken.

"Not only should the company have been informed of the forfeiture before it could be held by its action to have waived it, but it should also have been informed of the condition of the health of the insured at the time the premium was tendered, upon the payment of which the waiver is claimed. The doctrine of waiver, as asserted against insurance companies to avoid the strict enforcement of conditions contained in their policies, is only another name for the doctrine of estoppel. It can only be invoked where the conduct of the companies has been such as to induce action in reliance upon it, and where it would operate as a fraud upon the assured, if they were afterwards allowed to disavow their conduct and enforce the conditions. To a just application of this doctrine it is essential that the company sought to be estopped from denying the waiver claimed, should be apprised of all the facts; of those which created the forfeiture and of those which will necessarily influence its judgment in consenting to waive it. The holder of the policy cannot be permitted to conceal from the company an important fact, like that of the insured being *in extremis,* and then to claim a waiver of the forfeiture created by the act which brought the insured to that condition. To permit such concealment, and yet to give to the action of the company the same effect as though no concealment were made, would tend to sanction a fraud on the part of the policyholder, instead of protecting him against the commission of one by the company."

*New York Life Insurance Co.* v. *Fletcher,* 117 U. S. 519, is

an instructive case on the points in controversy here. The facts of the case, as stated in the syllabus, were as follows:

"A person applied in St. Louis to an agent of a New York insurance company for insurance on his life. The agent, under general instructions, questioned him on subjects material to the risk. He made answers which, if correctly written down and transmitted to the company, would have probably caused it to decline the risk. The agent, without the knowledge of the applicant, wrote down false answers, concealing the truth, which were signed by the applicant without reading, and by the agent transmitted to the company, and the company thereupon assumed the risk. It was conditioned in the policy that the answers were part of it, and that no statement to the agent not thus transmitted should be binding on his principal; and a copy of the answers, conspicuously printed upon it, accompanied the policy. *Held,* that the policy was void."

The unanimous opinion of the court was delivered by Mr. Justice Field, the principal portions of which were as follows:

"It is conceded that the statements and representations contained in the answers, as written, of the assured to the questions propounded to him in his application, respecting his past and present health, were material to the risk to be assumed by the company, and that the insurance was made upon the faith of them, and upon his agreement accompanying them that, if they were false in any respect, the policy to be issued upon them should be void. It is sought to meet and overcome the force of this conceded fact by proof that he never made the statements and representations to which his name was signed; that he truthfully answered those questions; that false answers, written by an agent of the company, were inserted in place of those actually given, and were forwarded with the application to the home office; and it is contended that, such proof being made, the plaintiff is not estopped from recovery. But on the assumption that the fact as to the answers was as stated, and that no further obligation rested upon the assured in connection with the policy, it is not easy to perceive how the company can be precluded from setting up their falsity, or how any rights upon the policy ever accrued to him. It is, of

course, not necessary to argue that the agent had no authority from the company to falsify the answers, or that the assured could acquire no right by virtue of his falsified answers. Both he and the company were deceived by the fraudulent conduct of the agent. The assured was placed in the position of making false representations in order to secure a valuable contract which, upon a truthful report of his condition, could not have been obtained. By them the company was imposed upon, and induced to enter into the contract. In such a case, assuming that both parties acted in good faith, justice would require that the contract be cancelled and the premiums returned. As the present action is not for such cancellation, the only recovery which the plaintiff could properly have upon the facts he asserts, taken in connection with the limitation upon the powers of the agent, is for the amount of the premiums paid, and to that only would be entitled by virtue of the statute of the State of Missouri.

" But the case presented by the record is by no means as favorable to him as we have assumed. It was his duty to read the application he signed. He knew that upon it the policy would be issued, if issued at all. It would introduce great uncertainty, in all business transactions, if a party making written proposals for a contract, with representations to induce its execution, should be allowed to show, after it had been obtained, that he did not know the contents of his proposal, and to enforce it notwithstanding their falsity as to matters essential to its obligation and validity. Contracts could not be made, or business fairly conducted, if such a rule should prevail ; and there is no reason why it should be applied merely to contracts of insurance. There is nothing in their nature which distinguishes them in this particular from others. But here the right is asserted to prove not only that the assured did not make the statements contained in his answers, but that he never read the application, and to recover upon a contract obtained by representations admitted to be false, just as though they were true. If he had read even the printed lines of his application, he would have seen that it stipulated that the rights of the company could in no respect be affected by his

verbal statements, or by those of its agents, unless the same were reduced to writing and forwarded with his application to the home office. The company, like any other principal, could limit the authority of its agents, and thus bind all parties dealing with them with knowledge of the limitation. It must be presumed that he read the application, and was cognizant of the limitations therein expressed.

"In *Globe Insurance Co.* v. *Wolff*, 95 U. S. 326, the policy declared that the agents of the company were not authorized to waive forfeitures, and this court held that effect must be given to the provision, except so far as the subsequent acts of the company permitted it to be disregarded. In *Insurance Co.* v. *Norton*, 96 U. S. 234, the policy contained an express declaration that the agents of the company were not authorized to make, alter or abrogate contracts or waive forfeitures, and this court held that the company could have insisted upon those terms had it so chosen. . . . The present case is very different from *Insurance Co.* v. *Wilkinson*, 13 Wall. 222, and from *Insurance Co.* v. *Mahone*, 21 Wall. 152. *In neither of these cases was any limitation upon the power of the agent brought to the notice of the assured.* Reference was made to the interested and officious zeal of insurance agents to procure contracts, and to the fact that parties who were induced to take out policies rarely knew anything concerning the company or its officers, but relied upon the agent who had persuaded them to affect the insurance, 'as the full and complete representative of the company in all that is said or done in making the contract,' and the court held that *prima facie* the power of the agents are co-extensive with the business entrusted to his care, and would not be narrowed by limitations not communicated to the person with whom he dealt. Where said agents, not limited in their authority, undertake to prepare applications and take down answers, they will be deemed as acting for the companies. In such cases it may well be held that the description of the risk, though nominally proceeding from the assured, should be regarded as the act of the company. Nothing in these views has any bearing upon the present case. Here the power of the agent was limited, and notice of such limitation given by being embodied in the application, which

the assured was required to make and sign, and which, as we have stated, he must be presumed to have read. He is, therefore, bound by its statements."

What, then, are the principles sustained by the authorities, and applicable to the case in hand?

They may be briefly stated thus: That contracts in writing, if in unambiguous terms, must be permitted to speak for themselves, and cannot by the courts, at the instance of one of the parties, be altered or contradicted by parol evidence, unless in case of fraud or mutual mistake of facts; that this principle is applicable to cases of insurance contracts as fully as to contracts on other subjects; that provisions contained in fire insurance policies, that such a policy shall be void and of no effect if other insurance is placed on the property in other companies, without the knowledge and consent of the company, are usual and reasonable; that it is reasonable and competent for the parties to agree that such knowledge and consent shall be manifested in writing, either by endorsement upon the policy or by other writing; that it is competent and reasonable for insurance companies to make it matter of condition in their policies that their agents shall not be deemed to have authority to alter or contradict the express terms of the policies as executed and delivered; that where fire insurance policies contain provisions whereby agents may, by writing endorsed upon the policy or by writing attached thereto, express the company's assent to other insurance, such limited grant of authority is the measure of the agent's power in the matter, and where such limitation is expressed in the policy, executed and accepted, the insured is presumed, as matter of law, to be aware of such limitation; that insurance companies may waive forfeiture caused by non-observance of such conditions; that, where waiver is relied on, the plaintiff must show that the company, with knowledge of the facts that occasioned the forfeiture, dispensed with the observance of the condition; that where the waiver relied on is an act of an agent, it must be shown either that the agent had express authority from the company to make the waiver, or that the company subsequently, with knowledge of the facts, ratified the action of the agent.

In the light of these principles, let us examine the contract that was made between the parties to the controversy before us. The contract was in writing, and in clear and unambiguous terms; that contract provided that "this entire policy, unless otherwise provided by agreement endorsed hereon or added hereto, shall be void if the insured *now has, or shall hereafter* make or procure, any other contract of insurance, whether valid or not, on property covered in whole or in part by this policy," and that "no officer, agent or other representative of this company shall have power to waive any provision or condition of this policy, except such as by the terms of the policy may be the subject of agreement endorsed hereon or added hereto, and as to such provisions or conditions, no officer, agent or representative shall have power or be deemed or held to have waived such provisions or conditions, unless such waiver, if any, shall be written upon or attached hereto, nor shall any privilege or permission affecting the insurance under this policy exist or be claimed by the insured unless so written or attached."

Such being the contract, and the property insured having been destroyed by fire on June 1, 1898, and the insurance company having denied liability because informed that other insurance was held by the insured on the same property, without the knowledge or consent of the company, this action was brought.

It is not pretended, as we understand the plaintiff's position, that by any language or declaration of the agent, at the time the policy was delivered and the premium paid, he claimed to have power to waive any provision or condition of the policy, nor that the plaintiff was induced to accept the policy by any promise of the agent to procure the assent of the company to permit the outstanding insurance and to waive the condition. The plaintiff's case stands solely on the proposition that because it is alleged, and the jury have found, that the agent had notice or knowledge of the existence of insurance existing in another company at the time the policy in suit was executed and accepted, and received the premium called for in the contract, thereby the insurance company is estopped from availing itself of the protection of the conditions contained in the policy. In

other words, the contention is that an agent with no authority to dispense with or alter the conditions of the policy could confer such power upon himself by disregarding the limitations expressed in the contract, those limitations being according to all the authorities presumably known to be insured. It was not shown that the company, when it received the premium, knew of the outstanding insurance, nor that, when made aware of such insurance, it elected to ratify the act of its agent in accepting the premium. On the contrary, all the record discloses is that the jury found that the agent knew, when the policy in the defendant company was issued and delivered to the plaintiff, that there was then subsisting fire insurance to the amount of $1500 in another fire insurance company, and that such knowledge had been communicated to the agent by or on behalf of the assured. There is no finding that the agent communicated to the company or to its general agent at Chicago, at the time he accounted for the premium, the fact that there was existing insurance on the property, and that he had undertaken to waive the applicable condition. Indeed, it appears from the letter of defendant's manager at Chicago, to whom the proofs of loss had been sent, which letter was put in evidence by the plaintiff and is set forth in the bill of exceptions, that the additional insurance held by the plaintiff was without the knowledge or consent of the company; and it further appears, and was found by the jury, that immediately on the company's being informed of the fact, the amount of the premium was tendered by the agents of the company to the insured. So that there is not the slightest ground for claiming that the insurance company, with knowledge of the facts, either accepted or retained the premium. The plaintiff's case, at its best, is based on the alleged fact that the agent had been informed, at the time he delivered the policy and received the premium, that there was other insurance. The only way to avoid the defence and escape from the operation of the condition, is to hold that it is not competent for fire insurance companies to protect themselves by conditions of the kind contained in this policy. So to hold would, as we have seen, entirely subvert well-settled principles declared in the leading English and American cases, and particularly in those of this court.

This case is an illustration of the confusion and uncertainty which would be occasioned by permitting the introduction of parol evidence to modify written contracts and by approving the conduct of agents and persons applying for insurance in disregarding the express limitations put upon the agents by the principal to be affected.

It should not escape observation that preserving written contracts from change or alteration by verbal testimony of what took place prior to and at the time the parties put their agreements into that form, is for the benefit of both parties. In the present case, if the witnesses on whom the plaintiff relied to prove notice to the agent had died, or had forgotten the circumstances, he would thus, if he had depended to prove his contract by evidence extrinsic to the written instrument, have found himself unable to do so. So, on the other side, if the agent had died, or his memory had failed, the defendant company might have been at the mercy of unscrupulous and interested witnesses. It is not an answer to say that such difficulties attend other transactions and negotiations, for it is the knowledge of the inconveniences that attend oral evidence that has led to the custom of putting important agreements in writing and to the legal doctrine that protects them when so expressed, and when no fraud or mutual mistake exists, from being changed or modified by the testimony of witnesses as to conversations and negotiations that may never have taken place, or the real nature and meaning of which may have faded from recollection.

Besides the importance of such considerations to the parties immediately concerned in business transactions, the community at large have a deep interest in the welfare and prosperity of such beneficial institutions as fire insurance companies. It would be very unfortunate if prudent men should be deterred from investing capital in such companies by having reason to fear that conditions which have been found reasonable and necessary to put into policies to protect the companies from faithless agents and from dishonest insurers, are liable to be nullified by verdicts based on verbal testimony. Increased importance should be given to the rules involved in this discussion

by the fact that, in latter times and in most, if not all, of the States, statutory changes have opened the courts to the testimony of the very parties who have signed the written instrument in controversy.

> *The judgment of the Circuit Court of Appeals is reversed. The judgment of the Circuit Court is likewise reversed, and the cause remitted to that court with directions to proceed in conformity with this opinion.*

THE CHIEF JUSTICE, MR. JUSTICE HARLAN and MR. JUSTICE PECKHAM dissented.