# Hood *v.* Prudential Insurance Company of America, Appellant.

*Insurance—Life insurance—Provision as to other insurance—Notice—Method of business.*

In an action upon a policy of life insurance it appeared that the policy contained this provision: " This policy shall be void if there is in force upon the life of the insured an industrial policy; previously issued by this company, unless the policy first issued contains an indorsement signed by the president or secretary authorizing this policy to be in force at the same time." It also appeared that the company kept its records solely by the number of the policy, and only as its attention was directed to the number would it have any notice whatever of the name, or any other means of identification of the applicant for additional insurance. The company issued 30,000 industrial policies in the course of each week. There was evidence that prior to the date of the policy in suit another industrial policy had been issued upon the life of the insured, and that this policy had no indorsement upon it authorizing the later policy. It appeared that the premiums on this policy were paid by the wife of the insured, and the premiums on the later policy by the insured himself. There was no evidence of actual notice or knowledge on the part of the officers of the company of the issuance of the later policy without the authorizing indorsement on the earlier policy. *Held,* (1) that the provision in the later policy requiring the authorizing indorsement on the earlier policy was reasonable in view of the circumstances under which the company conducted its business; (2) that the evidence failed to show any waiver on the part of the company of the provision requiring the authorizing indorsement; (3) that no recovery could be had on the policy in suit.

Argued Oct. 12, 1904. Appeal, No. 59, Oct. T., 1904, by defendant, from judgment of C. P. No. 5, Phila. Co., June T., 1901, No. 252, on verdict for plaintiff in case of William P. Hood, Executor of Harry L. Hood, deceased, v. Prudential Insurance Company of America. Before RICE, P. J., BEAVER, ORLADY, SMITH, PORTER, MORRISON and HENDERSON, JJ. Reversed.

Assumpsit on a policy of life insurance. Before MARTIN, P. J.

The facts appear by the opinion of the Superior Court.

*Error assigned* was in entering judgment on the verdict.

*Frederick J. Shoyer*, for appellant.—No principle of law will enable a party who guarantees a fact upon which a contract of insurance is based, which fact is afterward found not to exist, to enforce the contract. The purpose of requiring a warranty is to dispense with inquiry, and cast entirely upon the assured the obligation that the facts shall be as represented: State Mut. Fire Ins. Co. v. Arthur, 30 Pa. 315; Smith v. North Western Mut. Life Ins. Co., 196 Pa. 314; Com. Mut. Fire Ins. Co. v. Huntzinger, 98 Pa. 41; Meyer-Burns v. Life Ins. Co., 189 Pa. 579; Robertson v. Life Ins. Co., 88 N. Y. 541; Skinner v. Norman, 16 App. Div. 609 (46 N. Y. Supp. 65); Studwell v. Mut. Ben. Life Ass'n, 139 N. Y. 615 (35 N. E. Repr. 204); Aetna Ins. Co. v. Holcomb, 89 Texas, 404 (34 S. W. Repr. 915).

A presumption of waiver cannot be based upon a presumption of knowledge of the breach of a condition in a contract. A waiver is an intentional relinquishment of a known right, and there must be both knowledge of the existence of the right, and an intention to relinquish it: Ward v. Metropolitan Life Ins. Co., 66 Conn. 228 (33 Atl. Repr. 902). An inference cannot properly be based upon another inference: Keefer v. Life Ins. Co., 201 Pa. 448.

Where the waiver relied upon is based on a so-called presumption of the company's knowledge of the act of an agent, it must be shown that the agent had both authority from the company to make the waiver and actual knowledge of the facts: Northern Assur. Co. v. Grand View Bldg. Assn., 183 U. S. 308 (23 Sup. Ct. Repr. 133); Sitler v. Fire Ins. Co. (No. 1), 18 Pa. Superior Ct. 139; Wilson v. Fire Ins. Co., 174 Pa. 554.

In the absence of any duty to investigate, a company is not presumed to know what might have been ascertained from its records or public sources: Hood v. Prudential Ins. Co., 22 Pa. Superior Ct. 244; Home Friendly Soc. v. Berry, 94 Ga. 606 (21 S. E. Repr. 583); Hackett v. Ben. Legion, 60 N. Y. Supp. 806; Brown v. Life Ins. Co., 65 Mich. 306 (32 N. W. Repr. 610); Rhode v. Life Ins. Co., 129 Mich. 112 (88 N. W. Repr. 400); Jerrett v. Life Ins. Co., 18 R. I. 754 (30 Atl. Repr. 793); White v. Ins. Co., 6 Pa. Dist. Repr. 655; Merchants' Ins. Co. v. Paige, 60 Ill. 448; Pratt v. Ins. Co., 6 N. Y. Supp. 78; Sitler v. Fire Ins. Co. (No. 1), 18 Pa. Superior Ct. 139.

When the breach exists at the moment when, if ever, the contract comes into existence it must be waived at that moment, if ever, and at that very instant the writing purports to establish and insist upon the condition: Batchelder v. Queen Ins. Co., 135 Mass. 449.

*George Wentworth Carr*, for appellee.—The company is charged with knowledge of its own records: Lanigan v. Prudential Ins. Co., 63 Hun, 408 (18 N. Y. Supp. 287); Morrison v. Wisconsin Odd Fellows Mut. Life Ins. Co., 59 Wis. 162 (18 N. W. Repr. 13); Barnes v. Union Ins. Co., 45 N. H. 21; Rowley v. Empire Ins. Co., 36 N. Y. 550; 2 May on Insurance, sec. 370.

OPINION BY BEAVER, J., November 21, 1904:

When this case was here before, 22 Pa. Superior Ct. 244, we said: " 3. The policies are also void by their terms ' if there is in force upon the life of the insured an industrial policy previously issued by this company, unless the policy first issued contains an indorsement signed by the president or secretary, authorizing this policy to be in force at the same time.' The insured accepted the policy with that condition in it. Is it a reasonable condition? There is not sufficient testimony in the case, it seems to us, to determine that question. If, as is intimated, the company keeps its records entirely by the number of the policy and not by the name of the insured, for the reason that it is impossible to determine from mere name and description whether the individual taking additional policies is the same as the one previously insured, it may be that this provision would be not only reasonable but absolutely essential to the proper conduct of the business of the defendant company. Inquiry in this direction seems to have been shut off entirely by the rejection of the offers made by the defendant."

In this trial in the court below the plaintiff was allowed to introduce the testimony which had been rejected at the former trial. The witness Dexter, who was familiar with the manner in which the business of the company was transacted and its books kept, testified, in answer to questions, as follows: " Q. Speaking of the industrial alone, how many policies do you say your company issues weekly? A. Thirty thousand. The Court: How many in your division? A. About 3,000—

an average of 3,000; it fluctuates. Mr. Shoyer: Q. Are any of the industrial policies now or have they been since you were connected with the company kept according to an index of the names of the insured? A. No, sir. The Court: How are they kept? A. Entirely according to numbers of the policies which are issued weekly, first by divisions and then by the company's total as a whole. Q. Beginning with the first year of the company? A. Yes, sir. Q. And containing the serial number, beginning one year where the last policy of the preceding year ended? A. Yes, sir. The Court: The policies are known by numbers and not names? A. Yes; we likewise have the name, but the record of the policy is kept by the numbers."

The court below, after the testimony was all in, directed a verdict for the plaintiff, subject to the power of the court to enter judgment for the defendant, non obstante veredicto, upon the following points of law reserved. The facts, which are practically undisputed, were then fully set forth by the court, with the reserved point as follows:

" And now, October 16, 1903, the court directs the jury to render a verdict for the plaintiff, subject to the power of the court to enter judgment for the defendant non obstante veredicto upon the following points of law reserved:

" 1. Whether there is any evidence in this case entitling the plaintiff to recover. If not, judgment should be entered for the defendant, non obstante veredicto.

" 2. It is admitted that this action of assumpsit, brought by the plaintiff, as executor of the estate of Harry L. Hood, deceased, is based upon four policies of industrial insurance, numbered 12,742,991, 12,742,992, 12,742,993 and 12,742,994 respectively, dated August 28, 1899, issued upon the life of Harry L. Hood who died of consumption January 14, 1901, each policy being in the amount of fifty ($50.00) dollars, and each containing the following clause, under the head of ' Conditions and Agreements,' ' Fourth, policy when void: This policy shall be void if there is in force upon the life of the insured an industrial policy, previously issued by this company, unless the policy first issued contains an endorsement signed by the president or secretary authorizing this policy to be in force at the same time.'

" It is also admitted, upon the undisputed evidence, that on and after the issuance of the four policies in suit there was in force, upon the life of Harry L. Hood, an industrial policy, numbered 5,170,086 for $130, previously issued by the defend- ant company, dated October 3, 1892, and not containing any endorsement signed by either the president or secretary author- izing the policies in suit to be in force at the same time.

" It is also admitted, upon the undisputed evidence, that the defendant company issues about thirty thousand policies a week and that the company's only index to the name of any person insured by an industrial policy issued by the company is the serial number assigned to the policy according to its se- quence in the numerical order in which the policies were con- secutively issued, and that the record of the several industrial policies has always been kept entirely by their numbers and not by names, so that if the company desired to refer to the name of the person insured, it first had to have the policy number in conjunction with which alone the name was kept.

" It is also admitted, upon the undisputed evidence, that Harry L. Hood, by an application dated October 17, 1894, con- taining his statement that he was already insured in the de- fendant company on policy numbered 5,170,086, applied to the defendant company for additional industrial insurance to the amount of five hundred dollars and was examined by Dr. T. J. Ellinger, one of the defendant's medical examiners, that no policy was ever issued as the result of that application and examination, but that an agent of the defendant company in- formed the wife of Harry L. Hood that ' Mr. Hood didn't pass,' and she subsequently told her husband ' you didn't pass,' that the application, dated October 17, 1894, is numbered 77,776, and that the policy, numbered 5,170,086, contains endorsed thereon, in red ink, the number 77,776, which indicates to the company that there was a rejection on the life of the person insured under said policy, subsequent to its date, under appli- cation numbered 77,776. It is also admitted to be a prelimi- nary condition of the industrial policies that the defendant is not to be liable thereon unless the insured was in sound health when each policy was issued.

" Question. Whether upon the undisputed evidence relevant to the issue, the aforesaid clause of the 4th condition and

agreement of the policies in suit is reasonable and enforceable, notwithstanding that the insured may not have known, when he accepted the policies in suit, that policy numbered 5,170,086 was then in force. If the clause is reasonable and enforceable, judgment should be entered for the defendant, non obstante veredicto."

Judgment was subsequently entered for the plaintiff upon the verdict and this practically constitutes the one assignment of error.

It may be well to add that it appears from the testimony, without contradiction, that the defendant offered to return the amount of the premiums paid upon the policies in suit to the plaintiff and it also appears affirmatively that the widow of the insured, now Mrs. Smith, paid the premiums upon the original policy, 5,170,086, and that the amount of the policy was paid to her after the death of the insured.

The court below, in the opinion refusing judgment for the defendant, non obstante veredicto, said : " There was no evidence to indicate that any of the officers or agents of the company mentioned in the eighth condition as entitled to alter the contract or waive the conditions thereof had actual knowledge of the policy first issued." (The eighth condition being as follows : No person, except the president, one of the vice presidents or secretary of the company, can alter this contract or waive any condition thereof.) "It appeared that about thirty thousand industrial policies were issued each week by the defendant and that the only index kept of the policy holders was the number of the policy and that the business was transacted by reference to the policy numbers and not to the names of the persons insured. It was claimed, on behalf of the company, that the condition requiring the endorsement of the subsequent insurance upon the earlier policy was reasonable and that a failure to comply with its provisions rendered the later policies void.

" To hold this condition reasonable requires a construction of the contract in direct conflict with the principles of the cases adjudged in this commonwealth.

" In Davis v. Fireman's Fund Ins. Co., 5 Pa. Superior Ct. 506, it was held : If, at the time of issuing an insurance policy, the company knows that one of the conditions thereof is inconsist-

ent with the facts, and the insured has been guilty of no fraud, the company is estopped from setting up a breach of said condition, and the same rule prevails when the company ought to have known the facts constituting the alleged breach.

" The prior insurance in the present case being with the same company, the corporation must be recognized in law as having a knowledge of the business which it had transacted. It was further claimed that the eighth condition provided for the only circumstance under which any waiver of the terms of the policy could be effected. This, however, like any other condition, could be waived by the company.

" In the present case the prior insurance was with the defendant company and must appear in regular course upon their books. It was alleged that the volume of business and the method pursued by the defendant company in its transaction, prevented actual cognizance of the existence of the earlier policy by the particular officers authorized to effect waivers, but the mere convenience of a method of conducting business cannot be permitted to override clearly settled principles of law.

" As the evidence disclosed that the policies in suit were executed and delivered to the insured when the earlier policy had been issued by the same company in the regular course of business, that premiums were received from time to time until the death of the insured, without any action on the part of the company to repudiate the policies or to decline or return the premiums, there was abundant evidence to warrant the verdict for the plaintiff, and the enforcement of the written condition in reference to additional insurance in this case would be unreasonable and unwarranted by law."

1. Is the condition, declaring the present policies void, if there is in force upon the life of the insured an industrial policy previously issued by this company, unless the policy first issued contains an indorsement signed by the president or secretary, authorizing this policy to be in force at the same time, reasonable? The company issued 30,000 industrial policies in the course of each week, they kept their records solely by the number of the policy, and only as their attention was directed to the number would they have any notice whatever of the name or any other means of identification of the applicant for additional insurance. There would be, it seems

to us, reasonable grounds upon which a mode of doing business such as is established by the evidence and described in the reserved point would be adopted by the company. The similarity of names, the change of residence, the uncertainty of a description of the person and the liability to change in color of hair, etc., may have been considerations entering into the adoption of a peculiar mode of doing business pursued by the defendant company. That these circumstances are not imaginary or sentimental finds a striking illustration in the cross-examination by plaintiff's counsel on the trial, of Dr. Ellinger, one of defendant's witnesses, who was called to testify as to an examination of the deceased made by him. "Q. You remember Mr. Hood signing this application in your presence? A. Yes, sir. Q. You remember that very distinctly? A. Well, I don't know what you mean by that; I would never have witnessed the signature, if he had not signed his name. Q. Did you see the body of the decedent after his death? A. No, sir. Q. Did you ever see him again? A. Never. Q. How do you know this is the signature of the Harry L. Hood to the policy in suit? A. I don't know anything about that. I know I examined a Harry L. Hood. Q. And a Harry L. Hood signed his name here? A. Yes. Q. And whether it is the same or not you don't know? A. No, sir."

The character of the business transacted by the defendant is entirely different from that of fire insurance, in which the location of the property is fixed and the description likely to remain as conveying an adequate idea of the identity of the property, and also different from ordinary life insurance, in which the record of the business done by the company is carried on by using the name, residence and description of the person insured, as was done, as we understand it, by this company in all policies over $500. When it is considered also, as appears in the evidence in this case, that the defendant company carries industrial policies upon which the premiums amount to but five cents per week and that these premiums must be gathered by a collector, it may be that the question of cost may possibly enter into the consideration which moves the company to keep its records by number instead of by name or other description. If economy is the motive inducing it, it would be in the interest of the policy holders as well as the company. However

this may be, it is perhaps enough to say that the company adopted this method of keeping its records as most likely, in the opinion of its officers, to prevent a duplication of policies which might be undesirable from the company's point of view. This they undoubtedly had a right to do. They could adopt any system for the conduct of their business which did not contravene the rights of the insured and which was not contrary to law. This case is perhaps a good illustration of the wisdom of this mode of transacting their business. The plaintiff's decedent had taken out, or his wife had done so in her own interests with the knowledge of the decedent, an industrial policy on the decedent's life in the defendant company. Subsequently, upon application for another policy or for an enlargement of the first, it was refused on the ground that the physical examination was not satisfactory. This information was communicated to the wife and by her to her husband. Subsequently, when the policies in suit were taken out, they, as well as the previous policy, contained the stipulation referred to above, by which the policies were declared to be actually void, unless the previous policy held by the insured contained an indorsement signed by either the president or secretary, authorizing the policies in question to be in force at the same time. The insured accepted the policy with that condition in it. Is his executor bound by it? It seems to us he is, unless it be shown that the defendant had actual knowledge of the previous insurance and authorized the issuance of the policies in suit with that knowledge; or that subsequently such knowledge was brought home to an officer who had authority to bind the company, and premiums were subsequently received, the receipt of which would, of course, imply a waiver of the stipulation. There is no such evidence, however, in the case.

It is perfectly true, as stated by the court below, quoting from Davis v. Ins. Co., 5 Pa. Superior Ct. 506, that "if at the time of issuing an insurance policy the company knows that one of the conditions thereof is inconsistent with the facts and the insured has been guilty of no fraud, the company is estopped from setting up a breach of said condition, and the same rule prevails when the company ought to have known the facts constituting the alleged breach." Here, however, there was confessedly no knowledge that the acceptance of the new policies

was a breach of the conditions therein contained nor, under the facts as we view them, was the company necessarily presumed or bound to have such knowledge. Their manner of keeping their books conveyed no knowledge to them, the payment of premiums which, under ordinary circumstances, might have been a circumstance to go to the jury as to knowledge, was in this case no notice whatever, because the premiums on the original policy were paid by the wife and those on the later policies by the insured himself. What was there, therefore, to put the defendant upon notice? Nothing whatever; and when, therefore, the deceased accepted the policy, he did so, knowing that it was void and, inasmuch as the policy constituted the contract between the deceased and the defendant, he was bound by the stipulations therein contained. True, as already stated, if the officers of the company had such knowledge of the facts as brought home to them notice of the existence of the previous policy and issued the new policies in spite of that knowledge, or if such knowledge had been brought home to them after the issuance of the policies and they had done anything from which a waiver of the condition of the policy could be presumed, they might be estopped from claiming the benefit of the stipulation as to the avoidance of the policy; but there is nothing whatever in the evidence anywhere that convicts them of knowledge, actual or constructive, and nothing was done by them subsequent to the issuance of the policies which could be construed into a waiver of the stipulation.

2. The law of this case, as we view it, is very fully set forth in Northern Assurance Co. v. Grand View Building Association, 183 U. S. 308 (22 Pa. Superior Ct. 133). This was a fire insurance case but the general principles, upon which it was decided govern here. After a most thorough and exhaustive examination and analysis of the authorities in nearly all the states, Mr. Justice SHIRAS, in summing them up, says:

" What, then, are the principles sustained by the authorities, and applicable to the case in hand?

" They may be briefly stated thus: That contracts in writing, if in unambiguous terms, must be permitted to speak for themselves, and cannot by the courts, at the instance of one of the parties, be altered or contradicted by parol evidence,

unless in case of fraud or mutual mistake of facts; that this principle is applicable to cases of insurance contracts as fully as to contracts on other subjects; that provisions contained in fire insurance policies, that such policy shall be void and of no effect if other insurance is placed on the property in other companies, without the knowledge and consent of the company, are usual and reasonable; that it is reasonable and competent for the parties to agree that such knowledge and consent shall be manifested in writing, either by endorsement upon the policy or by other writing; that it is competent and reasonable for insurance companies to make it matter of condition in their policies that their agents shall not be deemed to have authority to alter or contradict the express terms of the policies as executed and delivered; that where fire insurance policies contain provisions whereby agents may, by writing endorsed upon the policy or by writing attached thereto, express the company's assent to other insurance, such limited grant of authority is the measure of the agent's power in the matter, and where such limitation is expressed in the policy, executed and accepted, the insured is presumed, as matter of law, to be aware of such limitation; that insurance companies may waive forfeiture caused by nonobservance of such conditions; that, where waiver is relied on, the plaintiff must show that the company, with knowledge of the facts that occasioned the forfeiture, dispensed with the observance of the condition; that where the waiver relied on is an act of an agent, it must be shown either that the agent had express authority from the company to make the waiver, or that the company subsequently, with knowledge of the facts, ratified the action of the agent."

Applying these principles to the case in hand, it must be evident:

*a.* That the accepted policy is the contract. Being in unambiguous terms, it binds the parties, unless in case of fraud or mutual mistake of facts, which is not here alleged.

*b.* That the provision in regard to other insurance is binding, unless actual knowledge by the company of the previous insurance is affirmatively proved.

*c.* That, where waiver is relied on, the plaintiff must show that the company, with knowledge of the facts that occasioned

the forfeiture, dispensed with the observance of the condition.

It is unnecessary to cite other authorities, inasmuch as the above comprehensive summary closes an exhaustive discussion of practically the whole field of pertinent authorities relating to fire insurance.

As already intimated, there is nothing in the evidence which can be construed to bring home to the company knowledge of the existence of the previous policy and, inasmuch as the premium on the original policy was paid by the wife and that on the later policies by the husband, the acceptance of the latter was not a waiver of the conditions of the policy, because it did not imply notice of the existence of the previous policy.

We are clearly of opinion that the defendant had the right to keep its accounts as they were kept, relying entirely upon the number of the policy as the means by which they acquired knowledge of what was therein contained as to the person insured, the person for whose benefit the insurance was made and the amount thereof and any other facts and circumstances contained therein necessary to be known by the defendant, and that the acceptance of the premiums after the issue of the policies, under the peculiar circumstances of this case, was in no sense a waiver of the condition contained in the policy, as to the policy being void if previous insurance was in force, particularly in view of the fact that the defendant offered to return the premiums, as shown in the cross-examination of the plaintiff in the trial.    The motion for judgment, non obstante veredicto, should, therefore, have been allowed.

The assignment of error is sustained, the judgment is reversed and judgment is now entered for the defendant upon the point reserved, non obstante veredicto.