### BECKER v. EXCHANGE MUT. FIRE INS. CO.

(Circuit Court, E. D. Pennsylvania. December 28, 1908.)

### No. 86.

1. INSURANCE (§ 361*)—PREMIUMS—BROKERS—NONPAYMENT.
    Plaintiff applied through brokers, S. & Co., for certain insurance, which they procured in defendant company through G., another broker. Plaintiff received the policy January 5, 1907, which provided that, if the premium was not paid before the 15th day of the month succeeding that in

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

which the policy was dated, it should be void, without notice or other act on the part of the company. Plaintiff made no payment until February 8th, when a check was sent to S. & Co., who in turn remitted to G.; but he made no offer to pay the premiums to defendant until March 1st, when payment was refused because a loss had occurred on February 22d. *Held*, that both brokers were plaintiff's agents, and, she being chargeable with their neglect, the policy was forfeited.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 923; Dec. Dig. § 361.*]

2. INSURANCE (§ 392*)—PREMIUMS—NONPAYMENT—WAIVER.

An insurance broker's contract with defendant company required payment of premiums within 40 days succeeding the month in which policies were issued. Plaintiff having secured a policy through such broker, the premium was charged in the broker's December account. The policy provided for forfeiture unless the premium was paid by the 15th of the month succeeding the date of the policy. The premium not having been paid on February 18th, the insurance company's representative wrote the broker, claiming that payment should have been made by February 10th; but no payment was made until after plaintiff had suffered a loss on February 22d, when payment on that policy was tendered and refused. On March 11th the company wrote to the broker, inclosing a bill for December policies and demanding payment of premiums not later than March 15th; but there was no evidence that the inclosed bill contained the policy in question. *Held*, that such correspondence did not constitute a waiver of the policy provision for forfeiture for nonpayment of premiums.

[Ed. Note.—For other cases, see Insurance, Dec. Dig. § 392.*]

3. INSURANCE (§ 384*)—WAIVER CLAUSE—VALIDITY.

A clause in a fire insurance policy that no officer or agent of the company should have power to waive any provision or condition, except as by the terms of the policy might be the subject of agreement indorsed thereon or added thereto, nor unless such waiver should be written on or attached to the policy, and that no privilege or permission affecting the insurance should exist or be claimed by the insurer unless so written or attached, was valid.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1018; Dec. Dig. § 384.*

Authority of insurance agent to waive prepayment of premiums, see note to Smith v. Provident Sav. Life Assur. Soc. of New York, 13 C. C. A. 292.]

At Law. Motion by defendant for judgment notwithstanding the verdict.

Davison & Seymour, for plaintiff.
H. B. Gill, for defendant.

J. B. McPHERSON, District Judge. After the evidence in this case had been put in, the parties agreed that there was no question to be submitted to the jury, and that the whole controversy was a question of law to be determined by the court. A verdict for the plaintiff was thereupon taken, subject to a reserved point, and the defendant has now moved for judgment notwithstanding the verdict. For the following reasons, I think the motion should prevail:

In December, 1906, the plaintiff, acting through her husband and agent, Charles W. Becker, employed Skinner & Co., of New York City, a firm of insurance brokers, to place insurance upon certain property in

the town of Little Falls. Skinner & Co. communicated with their correspondent in Philadelphia, A. B. McGuffey, and on December 20th McGuffey took out a policy of $2,500 in the defendant company. The policy was sent by McGuffey to Skinner & Co., and reached the plaintiff's hands some time before January 5, 1907. It was numbered 16,-103, and is referred to in the following letter:

"Amsterdam, N. Y., Jan. 5, 1907.

"Exchange Mutual Fire Insurance Co.,

"327 Walnut St., Philadelphia, Pa.

"Gentlemen: James R. Skinner & Co., our insurance brokers in New York City, have sent us policies No. 16,103, 16,104, 16,105, and 16,106 on various risks. These do not bear the indorsement allowing you to do business in New York state. Are you licensed to do business in this state?

"Kindly send us statement of the condition of your company, assets, etc.

"Yours truly,                         C. W. Becker, Agt."

On January 10th the plaintiff's agent addressed a second letter to the defendant:

"Amsterdam, N. Y., Jan. 10, 1907.

"Exchange Mutual Fire Insurance Co.,

"327 Walnut St., Philadelphia, Pa.

"Gentlemen: Kindly send us invoices for the following of your policies: 16,103, 16,105, and 16,106. Please make each one out separately.

"Yours truly,                         Chas. W. Becker, Agt., by A. V. H."

The policy in suit contains a peculiar provision concerning the payment of the premium:

"If the assured fails to make the payment in full hereinbefore named on or before the 15th day of the month succeeding that in which this policy is dated, this policy shall be null and void, without any notice or other act or thing to be given or done by the company, anything hereinbefore to the contrary notwithstanding."

It will therefore be seen that the plaintiff had possession of the policy as early as January 5th, and presumably had knowledge of the provision just quoted. Nevertheless, although the policy distinctly stated that unless payment in full should be made on or before January 15th the insurance should cease ipso facto, the plaintiff made no payment to any one until February 8th, upon which date a check was sent to Skinner & Co. to pay certain premiums, among them the premium on the policy in dispute. It does not appear when Skinner & Co. remitted to McGuffey; but at all events he made no offer to pay to the defendant company until March 1st, when he offered to Arthur R. Drake, the company's general agent, a check for the amount. This was refused, because meanwhile a fire had destroyed the property. The loss occurred on February 22d, and the plaintiff sent notice to the defendant under date of February 25th. To this notice the defendant replied on February 27th as follows:

"Philadelphia, Pa., Feb. 27, 1907.

"Mr. Charles W. Becker, Amsterdam, N. Y.

"My Dear Sir: Your favor of the 25th received. The premium under your policy has not been paid, and therefore we are not interested in the reported loss.

"We would refer you to the printed conditions of our policy, and suggest that you eliminate from your schedule of companies the policy of the Ex-

change Mutual, as we take the position that the other companies would be obliged to contribute proportionately, ignoring the amount of our policy.

"For your sake, we regret that the premium was not paid when due.

"Yours very truly,                                    Arthur R. Drake."

To this letter the plaintiff sent the following answer:

"Amsterdam, N. Y., Feb. 28, 1907.

"Exchange Mutual Fire Insurance Co.,

"327 Walnut St., Philadelphia, Pa.

"Gentlemen: Yours of the 27th received, relative to policy No. 16,103, and premium not having been paid. Beg to advise that we sent the James R. Skinner Co. check for this on the 8th of February, our check No. 6,061. This check paid several other policies. We have no doubt but that they sent you the remittance, and that through some failure in your office you have forgotten to give them the proper credit. This policy is in our possession and it stands against your company.

"Yours truly,                          Frances A. Becker, by C. W. Becker."

On March 1st the defendant company replied:

"Philadelphia, Pa., March 1, 1907.

"Mr. Charles W. Becker, Agent, Amsterdam, N. Y.

"My Dear Sir: We have your favor of the 24th ult. The premium under your policy was due and payable at this office on or before January 15th. The business was not received direct from your broker or agent, the James R. Skinner Co. The application was sent to us by another broker, whom we have been urging to make settlement, in order to have the insurance effective. The situation is unfortunate, and we regret it just as much as you do. You will admit, however, that you are responsible for the act or neglect of your broker, and no doubt if the business had been received direct from the James R. Skinner Co. the premium would have been paid, and neither of us placed in this unfortunate position.

"We are bound by the instructions of our board of directors to comply with the conditions and terms of policies, and the only thing we can do in the matter is to refer the whole situation to them at their next meeting, which will be within a few days.

"Check for the premium of this policy was tendered to us this morning, and we were obliged to refuse the same until authorized by the board of directors to the contrary.

"Is it out of place for us to suggest to you to refer the whole matter to your attorney, so that, if it is held that this company is not liable, it will not interfere with your collecting from the other companies what under different circumstances we would be obliged to contribute as an assurer?

"Yours very truly,                                    Arthur R. Drake."

Shortly after March 1st—the precise date does not appear—McGuffey, acting under instructions, took a $50 gold certificate to Drake's office and offered again to pay the premium. Upon Drake's refusal to receive it, he laid the money upon the desk and walked out of the office. Drake returned the money promptly by registered letter; but McGuffey declined to receive the communication, and the letter was thereupon returned to the defendant, and was opened in court at the trial of the case. Up to this point the evidence shows clearly that the plaintiff had no right to recover. Skinner & Co. were her agents, and so was McGuffey; neither being employed in any character by the defendant company. Both these agents discharged their duty in the first instance. They obtained the policy, and sent it to her in ample time to permit the payment of the premium on or before January 15th. But, in spite of the express and unequivocal warning upon the face of the policy, the

plaintiff neglected to pay, and the insurance according to its terms ceased to be effective on January 16th. The subsequent attempt to pay by sending the money to her own agents on February 8th could only become effective if the defendant should accept the payment, and, as it never had an opportunity to accept before the fire, the attempt was unsuccessful.

Admitting the soundness of this position, the plaintiff seeks to recover upon the ground that the defendant waived the foregoing provision of the policy, and it therefore becomes necessary to consider the evidence on this subject. The facts are not in dispute, and are briefly these: As already stated, McGuffey, acting as the representative of Skinner & Co., took out the policy in suit on December 20th. He had brought other business to the defendant company during that month, and the premiums on all the policies were charged to his account. This account remained unpaid on February 18th, and upon that date the defendant sent him the following letter:

"Philadelphia, Pa., Feb. 18, 1907.

"Mr. A. R. McGuffey, 1001 Chestnut St., Philadelphia, Pa.

"My Dear Sir: We respectfully call your attention to your unpaid December account, which is now long overdue. You may recall that, when you placed this business with us, we asked you particularly in regard to the payment of the premiums, and you promised us they would be paid within forty days succeeding the months of issue of the policies. The December account should, therefore, have reached this office not later than February 10th. Will you please see that check reaches us for these premiums tomorrow?

"Yours very truly, Arthur R. Drake."

No payment was made in response to this request, and soon afterwards came the fire and the correspondence that followed thereupon. Certainly, as it seems to me, this letter of February 18th lacks the essential elements of a waiver. Nothing was done or omitted by McGuffey to the plaintiff's prejudice as a result of the letter, and nothing was done or omitted by Skinner & Co., or by the plaintiff, even if either of them knew that such a letter had been sent. Upon the point of their knowledge there is no evidence whatever. The utmost effect that can be given to the letter is to regard it as containing an offer to receive the premium on this policy, although it was a month overdue, and it may well be that if the offer had been promptly accepted the company would have been bound to receive the money. That the company was ready to receive it, if it had been offered, is, I think, fairly to be inferred from the following language in their letter of March 1st:

"The business was not received direct from your broker or agent, the James R. Skinner Co. The application was sent to us by another broker, whom we have been urging to make settlement in order to have the insurance effective."

But the neglect of the plaintiff's agent to offer the premium continued, and within a few days the relation of the parties was radically changed by the happening of the fire on February 22d. In brief, the plaintiff's situation was this: She had a policy which expressly notified her that it would be null and void after January 15th. After that date, however, she made an effort to re-establish it, and sent to her agents in New York the necessary money to offer to the company in payment of the premium. These agents neglected to act promptly, and retained

the money until after the fire. Meanwhile, and in ignorance of the fact that the plaintiff's agents were holding the money, the company asked the agents' correspondent in Philadelphia to pay the premium with which he was charged, and in effect stated its willingness to accept it. This statement was not communicated to the plaintiff, or to her brokers, and, even if it had been communicated, no additional effect upon the present controversy would have been produced thereby. The plaintiff had already given the money to pay the premium, and her brokers had it in their possession. All that was necessary was to pay it over to the defendant. and the vital need of payment must have been well known to all parties concerned. It seems to have been a clear case of neglect on the part of the plaintiff's brokers, and of their negligence she must bear the consequence.

A word may be added concerning one other letter written by Drake to McGuffey. On March 11th, after all the foregoing correspondence had taken place and the company had definitely refused to pay, the following communication was sent:

"Philadelphia, Pa., March 11, 1907.

"Mr. A. R. McGuffey, 1001 Chestnut St., Philadelphia, Pa.

"My Dear Sir: We wish to call your attention to the inclosed bill and the fact that policies are outstanding the premiums under which have not been paid, although these policies were issued in December last.

"You have knowledge of the conditions of our policies, and we must ask that settlement be made promptly in accordance with your agreement. Please let us have your check by return mail for policies issued in December, and a check for those issued in February not later than the 15th.

"Yours very truly,                                        Arthur R. Drake."

The "inclosed bill" was not offered in evidence, and we are not otherwise informed of what it contained. Presumably it included only the premiums on the other policies which McGuffey had placed in December; for the company had positively denied liability on the policy in suit, and without proof it cannot be supposed that the payment of the premium on that policy was still being demanded.

But there is another objection to the effectiveness of the so-called waiver. Even if we concede the utmost force that the plaintiff assigns to the meager testimony concerning waiver, there is an insurmountable obstacle in a provision of the policy that has not yet been referred to:

"This policy is made and accepted subject to the foregoing stipulations and conditions, together with such other provisions, agreements, or conditions as may be indorsed hereon or added hereto, and no officer, agent, or other representative of this company shall have power to waive any provision or condition of this policy, except as by the terms of this policy may be the subject of agreement indorsed hereon or added hereto, and as to such provisions and conditions no officer; agent, or representative shall have such power or be deemed or held to have waived such provisions and conditions unless such waiver, if any, shall be written upon or attached hereto, nor shall any privilege or permission affecting the insurance under this policy exist or be claimed by the insured unless so written or attached."

As already stated, the only evidence that the company waived the provision concerning payment of the premium is to be found in the letters, and, as these were neither written upon nor attached to the policy, they were ineffective. I am aware of the conflict of decision upon this subject; but, for a federal court, the governing rule has been laid

down by the Supreme Court in Northern Assurance Co. v. Grand View Building Association, 183 U. S. 308, 22 Sup. Ct. 133, 46 L. Ed. 213. The following quotation from page 361 of 183 U. S., and page 153 of 22 Sup. Ct. (46 L. Ed. 213), summarizes the elaborate discussion contained in the opinion:

"What, then, are the principles sustained by the authorities, and applicable to the case in hand?

"They may be briefly stated thus: That contracts in writing, if in unambiguous terms, must be permitted to speak for themselves, and cannot by the courts, at the instance of one of the parties, be altered or contradicted by parol evidence, unless in case of fraud or mutual mistake of facts; that this principle is applicable to cases of insurance contracts as fully as to contracts on other subjects; that provisions contained in fire insurance policies that such a policy shall be void and of no effect if other insurance is placed on the property in other companies without the knowledge and consent of the company are usual and reasonable; that it is reasonable and competent for the parties to agree that such knowledge and consent shall be manifested in writing, either by indorsement upon the policy or by other writing; that it is competent and reasonable for insurance companies to make it matter of condition in their policies that their agents shall not be deemed to have authority to alter or contradict the express terms of the policies as executed and delivered; that where fire insurance policies contain provisions whereby agents may, by writing indorsed upon the policy or by writing attached thereto, express the company's assent to other insurance, such limited grant of authority is the measure of the agent's power in the matter, and where such limitation is expressed in the policy, executed and accepted, the insured is presumed, as matter of law, to be aware of such limitation; that insurance companies may waive forfeiture caused by nonobservance of such conditions; that, where waiver is relied on, the plaintiff must show that the company, with knowledge of the facts that occasioned the forfeiture, dispensed with the observance of the condition; that, where the waiver relied on is the act of an agent, it must be shown either that the agent had express authority from the company to make the waiver or that the company subsequently, with knowledge of the facts, ratified the action of the agent."

The provision concerning waiver that was under consideration in that case is identical with the provision now before the court, and the decision was (page 363 of 183 U. S., and page 133 of 22 Sup. Ct. [46 L. Ed. 213]), that fire insurance companies are at liberty to protect themselves by such a condition. This is conclusive of the present controversy.

Judgment may be entered for the defendant notwithstanding the verdict.