### BERTENSHAW et al. v. LINCOLN STATE BANK OF CHICAGO, Ill.

(Circuit Court of Appeals, Eighth Circuit. July 29, 1922.)

No. 5936.

1. Bills and notes ⬅123(1)—Officer signing his name twice to company's note held joint maker.

Where a note was signed in the name of a stated company by defendants' decedent and two others, and then decedent's signature occurred again, and these parties were described in the note as makers, decedent was liable as a joint maker.

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**2. Evidence ⚖═➤418—Parol evidence to show that comaker of note signed in representative capacity Inadmissible.**

Parol contemporaneous evidence to contradict or vary the terms of a note, and show that a comaker signed in a representative capacity, was inadmissible.

In Error to the District Court of the United States for the District of Kansas; John C. Pollock, Judge.

Action by the Lincoln State Bank of Chicago, Ill., against John Bertenshaw, as administrator, etc., and others. Judgment for plaintiff, and defendants bring error. Affirmed.

T. H. Stanford, of Independence, Kan. (L. G. Seacat, of Independence, Kan., on the brief), for plaintiffs in error.

Douglas Hudson and William P. Dillard, both of Ft. Scott, Kan., for defendant in error.

Before CARLAND and STONE, Circuit Judges, and TRIEBER, District Judge.

STONE, Circuit Judge. This is an action by the Lincoln State Bank against the administrator of John A. Hooker upon eight written instruments signed by Hooker. The widow and heir of Hooker intervened as defendants. From an adverse judgment on the pleadings, the defendant and interveners sue this writ of error.

[1] The notes, due at different dates, were in the form (italics ours) following:

"$5,000.00.                    Independence, Kansas, June 3, 1920.

"Four months after date *I, we, or either of us* promise to pay to the order of George F. Leibrandt, in Independence, Kansas, five thousand dollars, with ten per cent. interest per annum from date until paid, value received. To secure the payment of this note and of any and all other indebtedness which the *makers* now owe or may owe at any time before the payment of this note, there is hereto attached, as collateral security, the following:

...... Assignment of oil production on certain oil leases
...... As evidenced by separate assignment......

"The *makers* and indorsers of this note waive presentment for payment and protest hereof and agree that the payee or holder hereof, if this note is not paid at maturity, is fully authorized to use, indorse, collect, transfer or hypothecate said collateral substituted for or added to the above or any part thereof or may if default be made herein or shall at any time deem itself insecure, sell the said collateral at public or private sale, with or without notice, and purchase said collateral at any public sale and become the absolute owner thereof. That the proceeds of such sale shall be applied to the payment of this obligation and the *makers* and indorsers hereof will pay any deficiency and that any surplus may be applied to an indebtedness of the *makers* hereof, and that the payee or holder hereof may bring or defend any proceedings, legal or otherwise, necessary to protect its rights to said collateral and *we* will immediately pay all costs, expenses and attorney's fees incident thereto, such expenditures shall be an additional lien upon such collateral. If the payee or holder hereof shall at any time before the maturity of this note deem itself insecure, in addition to indorsing, collecting, transferring, selling or conveying said collateral, as provided for herein, it may at its option on demand declare this note due and enforce its collection.

"This is one of a series of eleven notes for $5,000.00 each, due one to eleven months inclusive after date and said collateral is for security pro

rata on each of said notes. Failure to pay any of the said notes within twenty days after maturity shall render all remaining unpaid notes due at the option of the holder or holders thereof.

> "Petroleum Production Company of America
> "By John A. Hooker
> "J. E. Goens
> "R. B. Marshall
> "John A. Hooker."

The execution of the notes was admitted in the answers. The defense was that Hooker had signed only in a representative capacity. It is obvious that the first signature by Hooker was for the company. The contention is that the last signature was as the agent of the promoters of that company. The instruments, executed as above, are clear and unambiguous. No business man or court could possibly read these executed instruments and have any doubt as to the meaning and effect of the last signature of Hooker thereon. Such signature was as joint obligor. Within the four corners of the writings there is not the slightest uncertainty as to this. If the defense pleaded could prevail it would completely reverse this clear meaning and effect of this signature by annulling the personal obligation definitely expressed thereby.

[2] It is difficult to conceive of a more perfect instance to which to apply the "fundamental rule, in courts both of law and equity, that parol contemporaneous evidence is inadmissible to contradict or vary the terms of a valid written agreement." Northern Assurance Co. v. Bldg. Ass'n, 183 U. S. 308, 318, 22 Sup. Ct. 133, 136, 46 L. Ed. 213.

We need not consider or determine whether these instruments are negotiable or not. The parol evidence rule, as above stated, is applicable to all valid contracts in writing. Since all evidence to support the defense pleaded was inadmissible, the court correctly sustained the motion for judgment on the pleadings.

The judgment is affirmed.